Mason v. Ryus.

---

## JAMES M. MASON v. WILLIAM H. RYUS.

1. DISMISSAL OF ACTION, *Without Prejudice; Discretion of Court.* Where a plaintiff, upon a trial before a jury, after the testimony had been closed, the arguments made, and the instructions finished, but before the bailiff had been sworn or the jury left the box, applied for leave to dismiss his action without prejudice, and the court gave such leave, *held,* that, whether plaintiff had then an absolute right to dismiss without prejudice, the court had a discretionary power to permit such a dismissal, and having exercised that power, its ruling is conclusive in any collateral inquiry, and the merits of the plaintiff's cause of action may be again inquired into.

2. PAROL TESTIMONY, *to Explain Written Contract.* Where the language of a written contract is not entirely perspicuous, is susceptible of two constructions, one showing an agreement apparently fair and reasonable, and the other terms highly favorable to the party preparing the writing and not likely to be knowingly accepted by the other party, *held,* that parol testimony is admissible of the prior parol negotiations, the situation and admissions of the parties for the purpose of determining in what sense the language of the written instrument was used by them.

*Error from Wyandotte District Court.*

ACTION brought by *Ryus* against *Mason*, to recover the value of certain volumes of a set of abstract books of the county of Wyandotte, and also for money had and received. Trial at the July Term, 1880, of the district court, and judgment for the plaintiff. The defendant brings the case here. The opinion states the facts.

*James M. Mason*, plaintiff in error, for himself.

*Alden & McGrew*, and *Hale & Miller*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action brought by defendant in error against plaintiff in error in the district court of Wyandotte county, to recover for the value of certain volumes of a set of abstract books of said county, and also for moneys had and received. Judgment was had in favor of the defendant in error, to reverse which this proceeding in error has been brought. Two questions only we consider of sufficient importance to deserve our attention, in one of which we sustain the ruling of the district court, and in the other of which we are constrained to believe the learned court erred. The latter of these we shall notice first. The facts in respect to this question are as follows: Defendant below set up a counter-claim; the district court held that such counter-claim had been finally adjudicated in a prior action, and that therefore all testimony in support of such claim was inadmissible. The record of the prior action discloses these facts: Defendant brought an action on this counter-claim, the case went to trial, testimony was received, arguments made, instructions given, and thereupon, before the bailiff was sworn and before he had taken charge of the jury to consider of their verdict, the plaintiff asked leave of the court to dismiss his case without prejudice to a future action, which leave was by the court granted; to which leave of the court the defendant therein then excepted. The

30 — 26 KAS,

question then is, whether upon this record there appears such a final adjudication as prevents further inquiry.

This question, we are constrained to say, notwithstanding the ruling of the district court, must be answered in the negative. The statute, § 397, code of civil procedure, provides that "an action may be dismissed without prejudice to a future action; first, by the plaintiff before the final submission of the case to the jury, or to the court, where the trial is by the court." Now the contention of the counsel for defendant in error is, that where the court has finished its instructions, the case is finally submitted to the jury, and thereafter the right of dismissal without prejudice has ceased. Upon this question authorities are cited upon both sides. We shall assume that the views of the counsel for defendant in error upon this point are correct; that the plaintiff's right of dismissal without prejudice, ceases with the close of the court's instructions. Whatever further action may be taken, depends upon the discretion of the court. We do not absolutely decide that this is the law. But conceding for the purposes of this case that it is, still we think that the ruling in the prior action is not a finality. There is a certain discretion given to the trial court, which, when exercised, concludes the parties as to all collateral inquiry until reversed by this court. This discretion appears in many cases. If defendant fails to file an answer within time, his right to answer ceases; but the court has a discretion upon proper showing to permit him to answer, and when permission is so given the ruling is conclusive. After a demurrer to plaintiff's evidence has been sustained, and before any judgment is in fact entered, the right of the plaintiff to dismiss his action without prejudice ceases; but the court has a discretion to permit him to so dismiss. (*Schäfer v. Weaver*, 20 Kas. 294.) So in a case of this kind, that discretionary power which a trial court possesses, enables it to dispose of a case, even after its instructions are finished, in such way as to preserve the future rights of the parties. The statutory right of the plaintiff to dismiss without prejudice may have ceased,

but the discretionary power and control of the court over proceedings before it is not ended, and it may even then open the case for further testimony or further argument. (*Cook v. Ottawa University*, 14 Kas. 548.) It may also, if the interests of justice require, permit a dismissal without prejudice. Such dismissal is not then an act of right, but an act of favor and discretion, but when granted it is until reversed the same as an earlier dismissal of right. The record in this case, as heretofore stated, shows that the district court granted leave to dismiss without prejudice after the close of its instructions, and before the jury had retired, and before a bailiff had been sworn to take charge of the jury. Now whether the plaintiff had then a legal right to dismiss without prejudice, the court had unquestionably the discretionary power to permit such dismissal. Having given such permission, the ruling until reversed is conclusive in any collateral inquiry, and it must be held in such subsequent inquiry that there had been no final adjudication; nothing which prevents a submission to another jury, or which prevents a further inquiry as to the rights of parties growing out of the alleged facts. Counsel for defendant in error urge that the error is not prejudicial; that defendant below could have offered all his testimony in 'support of his title, because the twenty-one books which Mason claimed were a part of the same set to which the eight belonged for which Ryus sued. The argument is not good. Mason might properly withhold his evidence, or the bulk of it, until his right to recover on his counter-claim was established. It makes a good deal of difference whether a party loses the value of eight or recovers that of twenty-one books. Again, a jury told that the title to the twenty-one had been adjudicated, would be apt to sustain the same title to the eight. The ruling is erroneous, and it is not clear that it did not work prejudice; on the contrary, it seems that it must have done. For the error in this respect, the judgment of the district court will have to be reversed, and the case remanded for another trial.

1. Dismissal of action, without prejudice; discretion of court.

Another matter presents the inquiry as to the limits to which parol testimony may go in the presence of a written instrument. The facts are these: Prior to November, 1878, Mason was the owner of three large numerical index books and twenty-nine pencil journals of the records of Wyandotte county, the whole making a complete set of abstracts for that county. Ryus claims that in November, 1878, he made a parol purchase of these books; that the contract was completed, and a partial payment made; the books delivered, and all done in the presence of witnesses; that some two months thereafter he applied to Mason for a bill of sale, and received from him the instrument which is now claimed by Mason as the only evidence of the terms of the contract. Mason, on the other hand, claims that although some negotiations were pending, no contract was in fact consummated until the execution of the instrument, and that that expresses the full terms of the agreement. Along in 1879 the parties officed together, the entire set of books being in the office, though occasionally volumes were taken home by Mason for night work at his house; until, some differences arising between the parties, they separated, and Mason carried off eight of the books; and the principal cause of action and the counter-claim of action are for the value of the eight and the twenty-one books, respectively. Now plaintiff claims that despite such written instrument, parol testimony is competent to show that he was in fact, long before its execution, the owner of the property named, by virtue of a completed parol contract, and delivery of the property to him. And secondly, that the terms of the written instrument are not perfectly perspicuous, and that therefore parol testimony is competent of the prior negotiations, as well as of the situation of the parties, in order to determine the true import and intent of the contract. The district court sustained the claim of the plaintiff, and admitted parol testimony, and this ruling we think must be sustained. The written instrument is in these words:

2. Parol testimony, to explain written contract.

"This article of agreement witnesseth, that I, J. M. Mason,

in consideration of 80 acres of land this day conveyed to me, and the payment to me of the sum of one hundred dollars, cash in hand, and the further consideration hereafter mentioned, hereby agree to sell and assign to Wm. H. Ryus one entire set of abstracts of title of the records of the office of register of deeds of Wyandotte county, Kansas, consisting of three large numerical index books and journals of 29 books of said record, from 'A' to '3' inclusive. Said journals to be neatly and fairly written into books furnished by said Wm. H. Ryus for that purpose. Provided, also, that the said Mason is to conduct and manage the abstract business and office for the said Ryus for six months, and as much longer as may be agreed upon; and said Mason is to make all abstracts and examinations for said work, and for his services have one-half of all fees coming to said business for the same. Said Mason may be employed to do work as attorney at law and attending court if he chooses so to do, and pledges himself to advance said work on said journals as rapidly as he is able, the said Ryus undertaking to do what he can outside of the office, in the way of obtaining business for said office, and to furnish office room, fuel, etc., for the purpose of making a comfortable place to work, free of charge. It is further agreed between said parties, that said Mason shall be allowed to pay off his note to Mrs. Crockett for $100 and interest, in abstracting, if it can be done, to her or to her agent L. H. Wood, without being compelled to divide said fees with said Ryus, and also some few other accounts amounting to less than $50, now owing by said Mason, part of which said Mason has agreed to pay in such work, the latter item to be done by said Mason out of his regular business hours, so as not to encroach upon the work on said journals; provided that it is understood that the said Mason shall write up three of said journals as specimen copies, for which he shall receive twenty-five dollars from said Ryus as an advance of one month's wages, as agreed upon. That the said Mason agrees to write up the remainder of said journals at a cost to said Ryus of ten dollars a volume per journal, each journal representing one book of said record. But said Ryus agrees to pay six dollars and seventy-five cents per journal, and no more, unless at his option he elects to take them at the price of $10 each, as proposed by said Mason. That the said Ryus shall be bound to take them at $6.75, at the option of said Mason; that the said Mason shall be bound to furnish them at $10 each, at the option of said Ryus; but said Mason does not

undertake to write said journals any fuller than his old pencil journals, and is to use abbreviations where practicable.

JAMES M. MASON.

"WYANDOTTE, January, 1879.          W. H. RYUS."

The construction put upon this contract by the parties differs very substantially. Mason claims that he sold simply the three index books with an obligation and option of copying the 29 epitomes or journals. Ryus claims that he bought that which Mason then had, an entire set of abstract books consisting of the three index books and the 29 pencil epitomes, and also contracted for the reproduction in ink of those pencil epitomes. It is conceded that the set of abstract books was not complete without the journal epitomes. It is shown that the land was valued at $10 an acre, making a consideration of $900 paid by Ryus. The highest value placed by anyone upon these journal epitomes was $25 a volume, and anyone familiar with records knows that the value of such an epitome means above the cost of the book the price of a certain limited amount of accurate labor. So that according to Mason's theory Ryus was in fact to pay $900 for three index books with an obligation on the part of Mason to prepare 29 epitomes on payment of apparently a full price therefor. While parties may make such a contract as this, yet it ought to be clear from the language used that they intended such terms, before a court will enforce them. It will of course be borne in mind that these index books were based upon county records, amounting to only 29 volumes. Any intelligent man can form some estimate of the value of such books. Any one knows also that the value of a set of abstract books diminishes with the number in existence, and so the witnesses testify. The understanding of Ryus of the terms of the contract seems a reasonable one. He bought, as he claims, the entire set of abstracts of title consisting of three index books and 29 journal epitomes, and as these latter were in pencil he made a further contract in reference to the copying of them, the copying and the price being in some respects optional with both parties. Between the words

"inclusive" and "said," in the fore part of the contract, is a period. Taking the first sentence then by itself, it contains a complete statement of the purchase and sale of the books. It is not unreasonable to construe all the further language of the contract with reference to the journals as a separate and independent agreement with reference to copying, and when such a construction makes the whole contract fair and reasonable, it is to be preferred to one which shows a contract improbable and unreasonable. The value of a set of abstract books being in its entirety and in the fact that there are no copies in other hands, it is more reasonable to suppose that Ryus contracted for all that Mason had, intending to have full control of the set, than to suppose that he contracted for only three out of thirty-two volumes, leaving it an easy work for Mason to complete a set for himself by copying only three volumes. Further, this view of the intent of the parties is supported by that provision of the contract for carrying on the abstract business. That seems to provide that Ryus is to furnish office room, fuel, and books, and Mason to do the work of abstracting. Such an arrangement would of course imply that Ryus owned the books. Why otherwise should Mason give up half his abstract fees for office room and the mere privilege of examining three index books? At any rate, if this be not the true view to be taken of the contract standing by itself, the language is far from clear in favor of the view claimed by Mason, and as the instrument was prepared by him it is not to be presumed that he made its provisions less favorable to himself than the understanding of the parties justified. Under the circumstances, the court might properly permit parol testimony of the situation of the parties, their admissions to others, and their previous parol negotiations, in order to clear up the doubt and determine what was the true intent and scope of their contract.

We do not think the court erred in permitting this parol testimony, and we think upon the evidence before them the jury properly construed its obligations; yet for the error here-

tofore noticed the judgment must be reversed, and the case remanded with instructions to grant a new trial.

All the Justices concurring.