# REESE HOWELL CO. v. BROWN et al.

No. 2748.    Decided Jan. 12, 1916.    On Application for Rehearing,
June 30, 1916.    (158 Pac. 684.)

1. DEEDS—CONSTRUCTION—RESTRICTIONS.  Before giving effect to
the rule of construction that the language in a deed creating
restrictions will be construed against the grantor, the court
will have recourse to every aid, rule, or canon of construction
to ascertain the intention of the parties, since it is the duty
of the courts to enforce, not to make, contracts.[1]  (Page 147.)

2. EASEMENTS—DURATION—DEED—"SO LONG AS."  Where a deed
granted the use of a passageway "so long as it shall be used as
a passageway," the words "so long as" implied a limitation in
the grant, and conferred the right to terminate the use on the
grantor, since, while a grantee may at any time relinquish his
right of passage without consulting the grantor, the grantor's
right to terminate it must be expressed in the instrument.[2]
(Page 149.)

3. EASEMENTS—WAY OF NECESSITY.  Where parties exchanged
deeds on the same day, and a right to use a passage "so long as
it should be used as a passageway" granted in one deed could
not be exercised except by crossing the land granted by the
other deed, no right of way being reserved in the latter, it
existed by implication, as a matter of necessity, the right of
user, so long as that right continued, and the fact that it was
not expressly reserved indicates that the words "so long as,"
used in the first deed, reserved a right to terminate the use
of the passageway.  (Page 150.)

4. DEEDS—CONSTRUCTION, ETC.—HABENDUM CLAUSE.  The haben-
dum clause of a deed may not be resorted to for the purpose
of creating a conflict nor to restrict nor enlarge the grant.
(Page 152.)

5. EASEMENTS — EXPRESS GRANT — CONSTRUCTION — HABENDUM
CLAUSE.  Where a deed granting a specific strip of land also
reserved a right of passageway in the grantor's premises "so
long as" it should be used as a passageway, the habendum
clause applied to the strip granted, and cannot aid the terms

---

[1]*Caine* v. *Hagenbarth*, 37 Utah 69, 106 Pac. 945; *Mining Co.* v. *Min-
ing Co.*, 5 Utah 635, 19 Pac. 198.

[2]*Brown* v. *Railroad*, 36 Utah 257, 102 Pac. 740, 24 L. R. A: (N. S.)
86.

and conditions imposed on the right of passage expressed in the granting clause. , (Page 152.)

6. EASEMENTS—WAY OF NECESSITY. Where the use of a passage-way was granted in a deed "so long as" it should be used as a passageway, and provided that the grantee might enter and pass through at any time and is entitled to a key to unlock the gates, it was clearly implied that the use as a passageway "by the grantor" was intended, and what is clearly implied need not be expressed.   (Page 152.)

7. EVIDENCE—PAROL EVIDENCE—DEEDS—PRIOR EXECUTORY CONTRACT. A written agreement between the parties made before a deed granting a limited right to use a passageway was not admissible to show that it was agreed between the parties that the right of passage was intended to be perpetual, since, in the absence of fraud, all conditions contained in an antecedent executory contract are merged in a deed.[1]   (Page 154.)

8. EVIDENCE—CONSTRUCTION OF DEED—PRIOR AGREEMENT. Although extrinsic evidence of prior negotiations may be introduced when there is ambiguity in the language of an instrument or uncertainty as to the intention of the parties, a written agreement between the parties reciting the right to use a passage-way without mentioning any limitation made before a deed granting a limited right to use the passageway was not admissible, to aid the court in arriving at the real intention of the parties, which sufficiently appeared.[2]   (Page 155.) ,

9. LIMITATION OF ACTIONS—FRAUD OR MISTAKE—KNOWLEDGE—PRE-SUMPTION. Under Comp. Laws 1907, Section 2877, subd. 4, pro-viding that an action for relief on the ground of fraud or mistake must be brought within three years, there being no allegations of concealment or estoppel, a mistake in a deed in describing the grantee's right in regard to use of a pas-sageway, delivered to the grantee thirty years before suit, was barred, since he will be presumed to have known of the alleged mistake.[3]   (Page 157.)

10. APPEAL AND ERROR—HARMLESS ERROR—DEMURRER—SEPARATE STATEMENTS OF CAUSE OF ACTION.  Sustaining a demurrer to one cause of action contained in a complaint, the essential alle-gations of which were contained in another cause of action stated to which demurrer was overruled, was not error.   (Page 158.)

[1]Savings & T. Co. v. Stoutt, 36 Utah 211, 102 Pac. 865.
[2]Burt v. Stringfellow, 45 Utah 207, 143 Pac. 234.
[3]Weight v. Bailey, 45 Utah 584, 147 Pac. 899.

On Application for Rehearing.

11. EASEMENTS—PRESCRIPTIVE RIGHT—HOSTILE CHARACTER—NECESSITY. Where a deed granted the use of a passageway "so long as it was used as a passageway," and the grantee used the way under the deed, and did not repudiate the license granted in the deed or apprise grantor that he was using it under a claim of right, such use could not ripen into a prescriptive right.  (Page 159.)

Appeal from District Court, Second District; *Hon C. W. Morse,* Judge.

Suit for injunction by the Reese Howell Company, a corporation, against Sarah J. Brown and others, in which defendants other than named defendants were discharged on disclaiming all interest in the subject-matter.

Judgment for named defendant, and plaintiff appeals.

AFFIRMED.

*Halverson & Pratt,* for appellant.

*C. C. Richards,* for respondent.

FRICK, J.

Some time in 1911 or 1912, the exact time is not shown in the abstract, Reese Howell commenced an action against the defendants Sarah J., George F., and Elliott Brown to restrain them from closing a certain passageway used by Reese Howell. After the commencement of the action Reese Howell transferred all of his interest in the subject-matter of the action to the Reese Howell company, a corporation, and the action thenceforth proceeded in its name. The defendants George F. and Elliott Brown disclaimed all interest in the subject-matter of the controversy, and so they were eliminated from the case. The action then proceeded to judgment between the Reese Howell Company, as plaintiff, hereinafter called appellant, and Sarah J. Brown, a daughter and heir at law of John Broom, deceased, hereinafter referred to as respondent, as sole defendant.

Three causes of action were stated in the complaint.  In the

Appeal from Second District.

first cause of action appellant claimed an easement in the nature of a right of passage, which right, it was alleged, was granted by a deed of conveyance over certain real property now owned by the respondent and formerly owned by her father John Broom, deceased.  In the second cause of action it was, in substance, alleged that by mutual mistake the duration or the time the right of passage should continue was omitted from the deed aforesaid, and hence appellant asked that the deed be reformed in that particular and enforced as reformed.  In the third cause of action the appellant alleged practically the same facts alleged in the first cause of action, and further alleged that it had acquired a right of passage by adverse user, etc.

Respondent demurred to all three causes of action separately, and the court sustained the demurrers to the first and to the second causes of action, and overruled the demurrer to the third cause of action.  Respondent then filed her answer to the third cause of action, in which she denied plaintiff's claim of adverse user, and a trial was had which resulted in findings of fact, conclusions of law, and a judgment in favor of respondent.  The appellant presents the record of the proceedings in the court below to this court, and asks us to reverse the judgment upon various grounds.

For the purpose of avoiding long descriptions in the deeds, etc., and, further, to avoid explanations which would be necessary without a plat, we append the following plat:

By reference to the plat it will be understood at once just what the controversy is about. The facts are undisputed, and, in substance, are: That in August, 1882, and prior thereto, Reese Howell, the predecessor in interest of appellant, owned and was in possession of a strip of ground marked "H" on the plat; that at the time aforesaid one John Broom, the father and predecessor in interest of respondent, owned and was in possession of the ground marked "B" on the plat. Mr. Broom, prior to 1882, had erected a hotel on the whole of the ground marked "B" and in that year it seems Mr. Howell also erected a business building on the full 33-foot front of the parcel marked "H" extending back approximately 80 feet. On the 26th day of August, 1882, Mr. Howell and Mr. Broom exchanged deeds. Mr. Howell conveyed to Mr. Broom the strip of ground which is marked "15x80" on the plat, to wit, a strip of ground 15 feet wide by 80 feet long, and Mr. Broom conveyed to Mr. Howell the small strip of ground marked "6'x80" on the plat, to wit, a strip of ground six inches wide by eighty feet in length. In the deed from Broom to Howell the right to pass through the alley marked "12" on the plat was granted in the following words:

"Also a right of way along and through that certain alley or passageway situated about 155 feet west of the southeast corner of lot one (1) aforesaid (being in the west end and forming a part of the brick building now owned by the grantor herein), and running north from Fifth street, so long as the same shall be used as a passageway, and the gates of which shall be closed and locked from six o'clock p. m. until seven o'clock a. m. on each day, and the grantee herein is allowed the privilege of entering or passing through said alley at any time, night or day, and to be provided with a key to unlock the same, and said grantee is to see that the same are locked during the time herein mentioned when used by him or by his authority."

The habendum clause, so far as material, reads as follows:

"To have and to hold, all and singular, the said premises, together with the appurtenances, unto the said party of the second part, and to his heirs and assigns forever."

The parties, as well as their attorneys, disagree with re-

gard to the meaning of the alleged grant. Counsel for appellant contend that in using the language in the deed aforesaid it was the intention of the grantor therein and that he did grant to Mr. Howell and his heirs and assigns a perpetual right of way or a perpetual right of passage through the alley marked ''12'' on the plat; while counsel for respondent vigorously argues that nothing was granted, or intended to be granted, except a limited and revocable right of passage— that is, the right of Howell to use the alleyway for passage should continue ''so long as the same shall be used as a passage way'' by the grantor and his heirs and assigns, and no longer. Counsel therefore contends that respondent had the right to cease the use of the alleyway as a passage at any time, and whenever she did so she had the legal and moral right to use the same for any purpose she saw fit. Upon the other hand, counsel for appellant contend that respondent was bound to permit it to use the passageway under the terms and conditions stipulated in the grant, which meant a perpetual use or until it or its successors or assigns consented to abandon it or did abandon its use.

We remark that it was made to appear that at the time the deeds were exchanged Mr. Broom's hotel covered the whole parcel marked ''B'' except that portion marked ''12,'' which constituted the passageway. Some time after 1882, however, Mr. Broom extended the hotel building over the passageway and left the lower story open as a passageway over the whole twelve feet aforesaid. It was further made to appear that in deeding the strip marked ''15x80'' Mr. Howell reserved no right of way over it, and hence he never had a right of way by grant over said fifteen foot strip. It was further shown that the six inches by eighty feet strip was granted to Mr. Howell for a partial foundation for the south wall of his building, and that fifteen by eighty feet strip was granted so as to prevent the light for that distance from being shut off from the rear of Mr. Broom's hotel.

In referring to the alleged grant in question here counsel for appellant contend that, if there is any uncertainty or ambiguity respecting the extent or scope of the right of passage as contained in the grant, such grant must be

construed most strongly against the grantor. They cite and rely upon the following authorities, which, they contend, support their contention: *Dunn* v. *English*, 23 N. J. Law 126; *Dodge* v. *Walley*, 22 Cal. 224, 83 Am. Dec. 61; *Lamb* v. *Medsker*, 35 Ind. App. 662, 74 N. E. 1012; *American Unitarian Ass'n* v. *Minot*, 185 Mass. 589, 71 N. E. 551; *Mining Co.* v. *Mining Co.*, 5 Utah 635, 19 Pac. 198; 2 Devlin on Deeds (2d Ed.), Sec. 848.

In nearly all, if not all, of the foregoing cases the rule contended for by counsel is stated in general terms, and without qualification, and, under the facts disclosed in those cases, we do not hesitate to say that they were all correctly decided, regardless of whether the rule shall be accepted and followed as broadly as it is stated in them or not. In *American Unitarian Ass'n* v. *Minot, supra,* all that was held, however, was this: That, where specific property is granted in express terms, but the right to the use thereof is restricted, then the language used in the clause containing such restriction will be construed and applied most strongly against the grantor. This, however, is far from holding that the language of the whole grant will be construed most strongly against the grantor. Where property is granted its use should not be held to be limited or restricted except where the limitation is stated in apt and express terms. In the section cited from 2 Devlin on Deeds the rule, in our judgment, is correctly stated by the author with all proper qualifications. The section is too long to be quoted in full here, but we take the liberty of calling attention to the language of an English author which is adopted by Mr. Devlin in said section. The author aforesaid, in referring to the rule, says:

"This rule is often misunderstood; it does not mean that the words are to be twisted out of their proper meanings, but only that where the words may properly bear two meanings, and where, after we have applied evidence, whether extrinsic or intrinsic, admissible under the foregoing rules, we are still unable to determine in which of these meanings they were used, we must take them in the meaning most disadvantageous to the person who uses them, unless the adoption of that meaning would work wrong."

While it is true that Mr. Devlin, in section 848, *supra,*

states the rule in the language of the author before referred to, yet he also clearly points out that the rule is one of construction merely, and should be resorted to only after all other means, rules, and canons of construction have been exhausted and there still remains doubt respecting the scope or meaning of the language constituting the grant. We have not held, nor do we now hold, that the rule will not, in a proper case, be given effect. We have, however, held, and are firmly committed to the doctrine, that we will have recourse to every aid, rule, or canon of construction to ascertain the intention of the parties before having recourse to the rule of construing the language of the parties either most strongly against or in favor of either of them. See *Caine* v. *Hagenbarth*, 37 Utah 69, 106 Pac. 945, and cases there cited. Under such circumstances it should be the aim of courts, as, no doubt, it is their duty, to ascertain and declare the intention of the parties, since that, and nothing else, constitutes their contract; and it is the duty of the courts to enforce, not to make, contracts. If, therefore, we can ascertain or determine the intention of the parties to the deed in question by having recourse to the ordinary rules of interpretation and construction, we may not invoke the rule insisted on by appellant's counsel. Considering the language used by the parties in granting the right of way through the alley, under all the circumstances surrounding them at the time, and in view of the grant in the deed from Mr. Howell to Mr. Broom, what was the intention of the grantor respecting the extent or scope of the right granted?

It certainly cannot be questioned that where, as in this case, a right of passage is granted to a person, such person may at any time relinquish or abandon his right of passage without assuming any responsibility and without consulting the grantor. See *Brown* v. *Railroad*, 36 Utah 257, 102 Pac. 740, 24 L. R. A. (N. S.) 86. Such, no doubt, was Mr. Howell's right under the deed in question. So far as Mr. Howell's right to abandon the use of the right of way was concerned, it therefore was not necessary to provide for a limitation or termination of the right of passage, but, if such termination was in the minds of the parties, it

was necessary to state it in so far as the grantor's (Mr. Broom's) right to terminate was concerned. Without that right reserved in the grant the grantor could not terminate the right of passage; the grantee, however, could cease to use it at any time. What, then, was the intention of the parties to the deed in question in using the language in the grant "so long as the same (the alleyway) shall be used as a passageway"? From what we have already said the words were not necessary so far as Mr. Howell was concerned. If he intended to cease using the passageway, he could do so without such right being expressed in the deed, but, if Mr. Broom desired to terminate the use, he was required to reserve the right of termination in the grant, and that is just what he did. There certainly can be no dispute that the words in the grant "so long as," etc., clearly imply a limitation upon the duration of the right of passage. Moreover, the limitation must also have been intended to subserve some purpose, and the right to enforce it must also have been intended to be conferred on either one or the other or upon both of the interested parties. In view of all the circumstances and of what has already been said, we cannot conceive how it can reasonably be contended that the option to terminate the use of the passageway was conferred upon the grantee in view that no duty was imposed upon him to maintain it, and in view that he could, so far as he was concerned, terminate the use at any time, independently of anything that is contained in the grant.

There are, however, still further reasons, one of which is that on the same day that the right of passage was granted and in the same instrument the grantor also granted to the grantee a strip of ground six inches wide by eighty feet long, and the grantee therein, by another instrument in which he was grantor, and ostensibly as a part of the transaction in the first deed mentioned, also granted to the grantor in the first deed a strip of ground fifteen by eighty feet, as shown on the plat. The deeds in which the six-inch strip and the right of way are granted to Mr. Howell and the one in which the fifteen by eighty foot strip is granted by him to Mr. Broom were made on the same day, witnessed by the same subscribing witnesses, and acknowledged before

the same notary public. It is fair to assume, therefore, that the deeds were prepared by the same scrivener, and that their contents were fully understood and approved by the respective parties thereto. In the deed from Howell to Broom in which the fifteen by eighty foot strip is granted by the former to the latter, although that strip cut off the continuation of the twelve-foot right of way, yet Howell reserved no right of passage over said fifteen-foot strip in his deed to Broom, and the latter never granted a right of way over that strip. The right of passage, therefore, as the grant then stood, and as it has always stood, ended at the north line of Mr. Broom's parcel, marked ''B'' on the plat, and did not extend over the fifteen-foot strip deeded by Howell to Broom. If the grant of the right of passage by Mr. Broom to Mr. Howell was construed by the parties to mean that Mr. Broom had the right to terminate the right of passage at any time by ceasing to use the passageway, then it can easily be seen why Mr. Howell made no reservation in his deed over the fifteen-foot strip granted to Mr. Broom. Such a reservation, had one been made by Mr. Howell, might have produced an irreconcilable conflict between the granting of the right of passage with the limitation by Mr. Broom and the supposed reservation by Mr. Howell over the fifteen-foot strip. If, therefore, the grant is construed so as to confer the option to terminate the right of passage on Mr. Broom, then there is no conflict between the Broom and the Howell grants. Moreover, if that construction is given to the grant, then no reservation in Howell's deed was necessary, for the simple reason that so long as Mr. Broom permitted Mr. Howell to pass through the twelve-foot alley or passageway his right to pass over the fifteen-foot strip was clearly implied. It may also be said to have existed as a matter of necessity, since the right to pass through the twelve-foot alley was useless unless the right to pass over the fifteen-foot strip existed in connection therewith. In other words, the right to pass over the fifteen-foot strip was, in legal effect, appurtenant to the right to pass through the twelve-foot passageway; but the right to pass over the fifteen-foot strip continued only so long as the right to pass through or over the twelve-foot alleyway continued, and no

longer. This view again lends color to the construction we have placed upon the grant in question.

Counsel for appellant, however, further contend that the habendum clause in Mr. Broom's deed should likewise be given proper effect. Of course, all parts of a deed, including the habendum clause, must be given proper effect, and especially where there is any ambiguity or uncertainty in the granting clause of the deed. The habendum may, however, not be resorted to for the purpose of creating a conflict, nor to restrict or enlarge the grant. The rule in that regard is, we think, well stated by the Appellate Court of Indiana in the case of *Lamb* v. *Medsker, supra,* where it is stated in the headnote in the following words:

"While every part of a deed should be examined and construed as a whole, and the habendum may be used to explain the intention of a granting clause expressed in general terms, yet the habendum cannot be used to contradict the granting clause or cut down the estate granted thereby, but, if it conflicts therewith, must give way before it."

There is, however, still another reason in this case why the habendum cannot be permitted to affect the grant. It must be remembered that there was an additional and substantial thing granted in the deed, namely, the six inches by eighty feet strip, to which the habendum clause could and did apply with full force. There is nothing, therefore, in the habendum clause from which it could be legitimately inferred that it was intended to affect the grant respecting the right of passage in any way whatever. The terms and conditions imposed on the right of passage are all expressed in the granting clause, and need no aid from, nor can they be aided by, anything that is said in the habendum. To avoid all misconception of what prompts us to arrive at the conclusions reached in this case, we desire to add that it certainly is apparent that the grantor intended to impose both restrictions and conditions on the right to use the passageway. The language of the grant is:

"The grantee herein is allowed the privilege of entering or passing through said alley at any time, night or day, and to be provided with a key" to unlock the gates, etc.

Is it not manifest that in using the foregoing language the option by the grantor to cease using the alleyway as a passageway, and thus to terminate the right of passage on the part of the grantee, although not expressed in apt terms, is nevertheless clearly implied? Is it not equally clear that it was not intended to grant to Mr. Howell any interest in the land or alley as such? Nor can it be contended that the right of passage was granted as an appurtenance to anything. What was, in fact, granted was a mere right of passage through the alleyway for such length of time as the alleyway should be used as a passageway. By whom used? By the grantor, or by his consent. We think this case comes squarely within the decision in *Batchelder* v. *Bank*, 66 N. H. 386, 22 Atl. 592. In that case the right to use the passageway was granted in these words: "So long as the same shall be used *by said grantor* as a passageway." The three italicized words are included in the grant in that case, while they are excluded therefrom in the case at bar. The grant in the case at bar is, however, restricted and conditioned in other respects as appears from the grant itself, which was not the case in *Batchelder* v. *Bank, supra*. From all that appears in the grant in the case at bar the option to cease the use of the passageway, and thus to terminate the grantee's right to its use, although not expressed by the insertion of the words "by the grantor," is nevertheless clearly implied by all that is said in the grant. What is clearly implied, therefore, was not required to be expressed. In the New Hampshire case the court held that in the grant the grantor (the bank) had the right to cease the use of the passageway at any time, and that when it ceased to use it the right to its use was terminated on the part of the grantee. In principle that case is not distinguishable from the case at bar. See, also, Jones on Easements, Sec. 370, where the author lays down the rule that, where the duration of a right of way or right of passage is defined or limited, the right may not be enlarged by implication. We think that where, as in the case at bar, the parties have all clearly manifested an intention to limit the duration of the right of passage, it is the duty of the courts to enforce that limitation, and not to dis-

regard it by giving a perpetual right where only a determinable one was intended. If, therefore, we consider the language in the deed when applied to the subject-matter of the grant and in the light of what we have already stated, there seems but one conclusion permissible, and that is that the right of passage through the passageway or alley by the grantee and his successors continued ''so long as the same shall be used as a passageway,'' and no longer, and by that was meant so long as the grantor shall use it or permit its use, and not so long as the grantee·shall use it, nor yet that it shall continue until terminated by the joint act of both.

It is, however, further contended that some time prior to the making of the deeds we have referred to the grantor and grantee therein had entered into a written agreement wherein the things granted in the deeds constituted the subject-matter of such agreement, that the right of way or passage was specially mentioned in that agreement, and that no limitation was placed upon such right. That agreement, it was contended, had been lost or destroyed in some way before the trial. Appellant's counsel undertook to bring the agreement in question before the court as evidence for two purposes: (1) To show that it was agreed between the parties that the right of passage was intended to be unlimited, that is, perpetual; and (2) for the purpose of aiding the court in arriving at the correct meaning of the granting clause in the deed from Broom to Howell. The written agreement was clearly not admissible as evidence for the purpose first mentioned. It has become elementary that, in the absence of fraud, all the conditions and provisions contained in an antecedent executory contract or agreement are merged in the deed which is executed and delivered in fulfillment of the stipulations contained in said agreement. In the·case of *Slocum* v. *Bracy*, 55 Minn. 22, 56 N. W. 826, 43 Am. St. Rep. 499, Mr. Justice Mitchell states the rule clearly thus:

"No rule of law is better settled than that, where a deed has been executed and accepted as performance of an executory contract to convey real estate, the contract is ,*functus officio*, and the rights of the parties rest thereafter solely on the deed. This is so although the deed thus accepted varies from that stipulated for in

the contract, as where the vendee accepts the deed of a third party in lieu of the deed of his vendor; and as, in the sales of land, the law remits the party to his covenants in his deed, if there be no ingredient of fraud or mistake in the case, and the party has not taken the precaution to secure himself by covenants, he has no remedy for his money, even on failure of title."

To the same effect are the following well-considered cases: *Clifton* v. *Jackson Iron Co.*, 74 Mich. 183, 41 N. W. 891, 16 Am. St. Rep. 621; *Davenport* v. *Whisler*, 46 Iowa 291; *Hampe* v. *Higgins*, 74 Kan. 295, 85 Pac. 1019; *Carter* v. *Beck*, 40 Ala. 599; *Williams* v. *Hathaway*, 19 Pick. (Mass.) 378. To the same effect is *Savings & T. Co.* v. *Stoutt*, 36 Utah 211, 102 Pac. 865. The case of *Clifton* v. *Jackson Iron Co.*, *supra*, affords a strong example of the rule and its enforcement.

Now, as to the second proposition, namely, that the court erred in refusing to permit the appellant to prove the contents of the lost or destroyed writing for the purpose of aiding the court in arriving at the real intention    **8** of the parties to the writing with respect to the granting of the right to pass through the passageway mentioned in the deed: It is quite true that, where there is an ambiguity in the language or uncertainty respecting the intention of the parties to a writing in question, the courts, within certain limits, should be, and generally are, liberal in availing themselves of all legitimate evidence, both intrinsic and extrinsic, so far as such evidence, is admissible under the rules of evidence, to ascertain the sense in which certain language was used by the parties and to arrive at their intent. See 1 Elliott on Evidence, Secs. 576 and 605; 2 Elliott on Contracts, Secs. 1508 and 1655; *Mason* v. *Ryus*, 26 Kan. 464; *Burt* v. *Stringfellow*, 45 Utah 207, 143 Pac. 234. The rule is, however inflexible that extrinsic evidence consisting of prior negotiations, etc., when proper for the purpose of aiding the court to arrive at the intention of the parties, may not be admitted or used for the purpose of varying or contradicting the terms of a writing, but is strictly limited for the purpose of aiding the court in ascertaining the correct meaning of the language used by the parties and to determine their intention, from the language when its correct meaning is ascertained. In view that the contract in question was

lost or destroyed counsel were unable to offer it in evidence, but they did offer to prove the contents thereof, and thus bring the stipulations contained therein before the court. They thus made an offer to prove the contents of the contract respecting the right to use the passageway by the grantee, Howell. They offered to prove in that regard that "nothing was said as to the limit of time in that contract." That is, all that was said in that regard was that Mr. Howell should be granted a right of passage through the passage or alleyway. Conceding that counsel had proved just what they stated they could prove in that regard, still we cannot see how that fact, standing alone, could aid the court in determining either the meaning of the language used or the intention of the parties. Suppose the conditions had been reversed and the language in the agreement had been as it is in the deed from Broom to Howell, and the language in the deed as it is alleged it was in the agreement; would counsel concede that for that reason the grant in the deed would not control? Further, would they concede that what was contained in the agreement could be resorted to to cut down or restrict the rights of the grantee in the deed? We have already seen that, in the absence of fraud, etc., the rule is inflexible that the terms of an executory contract are merged in the deed which is subsequently given as fulfillment of the contract. In view of that rule the contract in question ceased to exist at the moment the deed was delivered, except, perhaps, for the purpose of aiding the court in arriving at the true intention of the parties in case there was any ambiguity in the language used by them or the subject covered in the contract. But how could the mere fact that nothing was said in the contract respecting the length of time the right to use the passageway should continue aid the court in determining what was meant by what was stated in general terms in the deed respecting the right of way? All that counsel offered to prove was that nothing was said in the contract except that Howell should be granted a right of way or right of passage through the alleyway. This right was granted to him in express terms in the deed. Had the contract contained a provision that the right should be unconditional and perpetual

the deed still would control, but it might then with some show
of reason be claimed that the language used in the deed should
be given a broader meaning.   In view, however, that such is.
not the case, the court could receive no aid whatever from
the language which it is alleged was contained in the written
agreement.   Merely to state in a contract that at some future
time one of the parties to it should be granted a right of way
cannot aid any one in determining what is meant in a subse-
quent grant in which the right to the use of a passageway
is limited either in respect of time or manner of use.   All
that can be said is that by the terms of the contract one of
the parties was to be granted a right of passage through or
over a specified way without defining its duration, extent, or
conditions, all of which were, however, more fully defined in
the deed which was given in fulfillment of the contract.   Under
such circumstances there is absolutely no conflict between the
written agreement and the grant in the deed.   We are of the
opinion that the court did not err in rejecting appellant's
offer of proof upon the ground that it was immaterial, if for
no other reason.

In view of the foregoing we need not consider the question
that the witness offered by appellant to prove the contents of
the lost agreement was disqualified from testifying against the
respondent as one claiming as an heir of a deceased person
under Comp. Laws 1907, Sec. 3413, as contended for by re-
spondent.   Upon that question we express no opinion.

Appellant, however, also insists that the court erred in sus-
taining the demurrer to the cause of action wherein appellant
sought a reformation of the grant in Broom's deed re-
specting the right of passage to the effect that the          9
right be made a perpetual right in accordance with
the alleged intention of the parties to said deed.   The allega-
tions of appellant's cause of action in that regard are that:

"By the mistake of the scrivener of said deed and the mu-
tual mistake and understanding of the parties thereto, name-
ly, the plaintiff (Reese Howell) and the said John Broom,
were omitted apt and proper words to limit, define, and char-
acterize plaintiff's right, interest, and easement in and to said

alleyway or passageway, intended by said instrument to be conveyed by the said John Broom to the plaintiff, which omission or mistake had not theretofore been observed or discovered by the plaintiff.''

What the appellant claimed was intended to be and should have been inserted in said deed is also fully pleaded. There are additional allegations of inducement, etc., but those are not material here. In this connection we must not forget that the deed in question was made and delivered to the grantee at least thirty years before the dispute over the passageway arose. There are no allegations of concealment or estoppel, and we must thus assume that Mr. Howell, during the whole period of said thirty years, should have known, and therefore must be deemed to have known, the contents of his deed. If a mistake occurred, therefore, as alleged, he at least had all the means in his possession of ascertaining that fact, and hence must be deemed to have known of the alleged mistake, under such circumstances our statute of limitations (Comp. Laws 1907, Sec. 2877, subd. 4) which was pleaded as a defense to the cause of action in question constitutes a complete bar. This action, in principle, is not distinguishable from the very recent case of *Weight* v. *Bailey,* 45 Utah 584, 147 Pac. 899. In that case the question of the right to maintain an action to reform a written instrument was involved, and section 2877, subd. 4, *supra,* was pleaded as a bar. We there held that, where the facts constituting the alleged fraud or mistake are known, or where the circumstances are as in this case, that is, if the facts should have been known by the complaining party, he cannot successfully maintain an action to reform an instrument after the statutory period fixed in said section has elapsed.' The decision in that case is conclusive here. We need not pause, therefore, to further consider the cases cited upon that question by counsel. The court therefore did not err in sustaining the demurrer to the second cause of action.

Nor did it err in sustaining the demurrer to the first cause of action, since all essential allegations on which plaintiff could assert any legal right were contained in the third cause of action, to which the demurrer was overruled on which the case was tried and determined.

For the reasons stated, the judgment should be, and it accordingly is, affirmed, with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.

ON APPLICATION FOR REHEARING.

FRICK, J.

Appellant's counsel have filed a petition for rehearing in which they, at great length and with much force, reargue the question of the construction of the deed passed on in the opinion. We could subserve no good purpose in again answering counsel's arguments. It goes without saying that upon questions like those passed on in the original opinion there is room for differenence of opinion. Under our system of jurisprudence, however, the duty is imposed upon us to make final disposition of all questions presented for review. In this case the judge of the district court, the writer, and both of his Associates, after a most careful consideration of the questions involved, have arrived at the conclusion that the respondents should prevail. We have given the matter the best efforts of which we are capable. We can do no more. After again carefully going over counsel's petition for a rehearing, we are still of the opinion that the original decision is right.

It is, however, further insisted that we did not consider nor pass on appellant's claim of the statute of limitations; that is, that it had acquired a right of passage by prescription or adverse user. It would seem that inasmuch as we held that the right granted in the deed was a revocable one and so intended by the parties, and that the appellant entered upon and continued in the enjoyment of the right and used the passageway under the deed in question up to the time of bringing the action, and, in view that there is not the slightest evidence that it at any time repudiated the license granted in the deed nor apprised the respondents either directly or indirectly that it was using the passageway not under the deed, but under a claim of right, therefore the question of adverse user was not to be seriously considered. The question was, however, necessarily disposed of in the decision. If that be longer doubted, however, we now hold that

the mere fact that the appellant continued the use of the passageway under the circumstances disclosed by the record, and as shown in the opinion, such use could in no event ripen into a prescriptive right.

The petition should therefore be, and it accordingly is, denied.

STRAUP, C. J. and McCARTY, J., concur.