## HODGES IRR. CO. v. SWAN CREEK CANAL CO.

No. 7005. Decided May 21, 1947. (181 P. 2d 217.)

See 67 C. J. Waters, Sec. 1041; Irrigation canal; contracts covering structural changes in system, note, 68 A. L. R. 46. See, also, 12 Am. Jur. 787, et seq.; 30 id. 638.

*Preston & Harris,* of Logan, for appellant.

*Moyle, McKay, Burton & White,* of Salt Lake City, for respondent.

WADE, Justice.

The Hodges Irrigation Company, a mutual irrigation company, commenced this action against the Swan Creek Canal Company, also a mutual irrigation company, for contribution of expenses for the maintenance and operation of a canal used by both companies as provided by Sec. 100-1-9, U. C. A. 1943, to which suit the defendant answered that their respective liabilities for maintenance and repair were governed by a contract entered into in 1903 between it and plaintiff's predecessor in interest. From a judgment of no cause of action plaintiff appeals.

The Swan Creek Canal Company, the respondent herein, and its predecessors in interest, had originally constructed a canal to carry its irrigation waters from Swan Creek, which is about three miles north of Garden City in Rich

County, Utah. In 1903, the Hodges Land, Livestock and Milling Company, the predecessor in interest of appellant herein which was then a stockholder in the Swan Creek Canal Company and was using this canal to carry its waters, desired to enlarge the capacity of this canal so as to be able to carry more of its waters and therefore entered into a written agreement with respondent to increase the capacity of the canal by enlarging it at certain points and by building a flume at a point near the head of the canal. At the time this agreement was entered into the entire capacity of the canal was 21 or 22 c. f. s. of which appellant's predecessor in interest was entitled to one-third and respondent herein to two-thirds. After the flume was constructed and the canal enlarged under the terms of the contract, the capacity to carry water was more than doubled and as a result appellant was able to carry 28 c. f. s. of its water through it and respondent 21 c. f. s. In 1924 and 1925 appellant removed the flume and widened the canal about three feet. In 1926 a new weir was installed and since that time appellant and respondent each received one-half of the water carried in the canal.

Under the terms of the agreement respondent had been paying $6 per year in cash or labor as its share of the expense for the repair and maintenance of that part of the canal in which the flume was placed which was at the point of appropriation in Swan Creek and ran for approximately 1800 feet around a rocky terrain and was the most difficult part of the entire system to maintain and repair. After the flume was removed, appellant requested respondent to pay half of the expense of the maintenance of the entire canal, including the part in which the flume had formerly been. Respondent was of the opinion that the agreement was still in force and that under its provisions it was only obligated to pay $6 per annum for the repair and maintenance of the 1800 feet of the canal where the flume had formerly been placed. In the settlements of accounts between appellant and respondent from 1903 until 1927, respondent always paid in cash or labor $6 as its share of the expense for the

maintenance and repair of the canal where the flume was placed. After 1927 and after the flume was removed, a controversy arose between appellant and respondent as to how much respondent should pay as its share of the expense of maintenance of that part of the canal in which the flume had been. Respondent's witnesses testified that in all of its settlements of accounts with appellant its share of the expenses for the 1800 feet where the flume had formerly stood were based on the provision in the contract which obligated it to pay $6. This was disputed by appellant's witnesses. The evidence was not certain as to whether respondent had always paid the $6 each year after 1927 since the time and method of settlements of accounts between the companies was informal and did not always take place every year. However, there was evidence that respondent paid appellant's secretary $6 for its share of the expense of maintaining the 1800 feet in 1944 and that in 1946 appellant refused such a payment for the year 1945.

The court found that from 1927 up until 1945 there had been settlements of accounts between the parties to the action in which the obligation of the respondent herein to maintain the canal at the point where the flume had been located was accounted as $6.00 as provided in the contract and that the contract was clear and unambiguous and that there had been no change in circumstances which would alter the contract. That the contract was in full force and binding upon the parties relative to the maintenance of the canal and that Sec. 100-1-9, U. C. A. 1943 does not apply as the rights of the parties are governed by the contract of 1903.

Appellant assigns these findings and the judgment in accordance therewith as error.

Appellant argues that the contract is not so worded that it clearly relieves respondent of its statutory duty under Sec. 100-1-9, U. C. A. 1943, to contribute its share to the maintenance and upkeep of the entire canal, and that from the time the flume was removed the provision in the contract referring to the flume or canal where the flume was placed had no further effect and the $6 payment provided for

therein only applied so long as the flume was maintained in the canal in good condition.

The parts of the agreement of 1903 which are pertinent to our problem read as follows:

"Whereas, said second party [appellant's predecessor] is desirous of enlarging the same at certain points and of placing in the bed of the same at a point near the head thereof a board flume of such dimensions and so placed as not to disturb or damage the bank of the canal at said point; and,

"Whereas, the annual cost of cleaning said canal at the points where said second party proposes to enlarge the same amounts to about fourteen cents per share and the annual cost of the cleaning of the same at the point where said flume is to be located amounts to $6.00.

"Now, therefore in consideration of the premises and of the mutual covenants and agreements of the parties hereto, said first party hereby consents to the enlargement of said canal as aforesaid and to the construction of said flume and annually for the period of five years to pay in cash or labor at the option of said first party, fourteen cents per share on the outstanding capital stock of said first party, toward the expenses necessary in cleaning and repairing such enlarged parts of said canal, and forever after the expiration of said period of five years, the expenses of cleaning and repairing said canal at such points shall be borne by said parties in proportion to their respective interests in and to the waters of the same. Said first party also agrees to pay to said second party the sum of $6.00 per annum in lieu of the expenses of cleaning and repairing said canal where said flume is to be located, so long as said second party shall maintain such flume and canal where same is placed in good repair and condition.

"Said second party in consideration of the premises and of the covenants and agreements herein of said first party, hereby agrees to use due care and caution in enlarging said canal and in building said flume and to do so in such manner as not to injure or weaken the bed or banks of the same and to forever keep said canal at said points in good repair and condition, and to hold said first party free from any and all injury, loss or damage on account of any such change in said canal. Said second party further agrees to maintain the bed and banks of said canal at the place of said flume in as good condition as at present and in such condition that if said flume should break or be removed the waters of said canal would flow through said canal the same as at present, and at its own costs and expense said second party agrees to keep said flume in good repair and condition so long as the same remains in said canal, * * *

"In the event of the failure of said second party to maintain said flume and the bed and banks of the canal where the same is placed

in good repair as above provided, said first party shall have the right at the expense of said second party to remove said flume and to restore said canal to its present condition."

From a reading of the above provisions of the contract it readily appears that the parties thereto agreed that the cost to the respondent herein for the maintenance and repair of that portion of the canal where the flume was placed was to be $6.00 per year "so long as the said second party shall maintain such flume *and* canal where same is placed in good repair and condition." (Italics ours.) This clearly shows the intention of the parties that if both the flume or the canal in which it was placed were not so kept the respondent would not be obligated to pay the $6. It is also obvious that it was contemplated by the parties to the contract that the flume might be removed after it was built, as is shown by the express provision that the respondent herein could remove the flume if it were not kept in good condition and repair and from the provision obligating appellant's predecessor in interest to keep the bank and bed of the canal in as good a condition as it was at the time of the execution of the contract and to keep the flume "in good repair and condition so long as the same remains in said canal." When appellant removed the flume and widened the canal about three feet the condition upon which respondent's obligation to pay $6 rested, no longer existed because as we have shown under the terms of the contract the respondent only had to pay that sum "so long as said second party shall maintain such flume and canal where same is placed in good repair and condition." The words "so long as" are words of limitation which fix the duration of an obligation upon the condition of the existence of a state of facts and when those facts no longer exist the obligation also ceases. See *Reese Howell Co.* v. *Brown,* 48 Utah 142, 158 P. 684, 686, in which this court held that the words "so long as" in a grant of a passageway were words of limitation. The court therefore erred in finding that the contract establishes the obligation of respondent herein to pay $6 per annum for

the maintenance of that part of the canal where the flume had formerly been unless respondent's contention is correct that such was the interpretation the parties themselves had placed on this provision.

Respondent argues that if the contract is ambiguous the court should take into consideration the interpretation placed by the parties themselves on the provision now in controversy. While as we have shown the terms of the contract are unambiguous, still even if they were ambiguous respondent cannot succeed on that theory. It is respondent's contention that the evidence is uncontradicted that for a period of 40 years since the inception of the contract both parties interpreted it to the effect that respondent's obligation was to pay $6 per annum for that portion of the canal in which the flume had been located.

We have carefully read the record and find that from the time of the inception of the contract until the time the flume was taken out both parties interpreted the contract as respondent contends, but after the flume was removed a controversy arose as to what respondent's obligations were with respect to the maintenance and repairing of that portion of the canal in which the flume had formerly been placed. One of respondent's own witnesses on cross-examination testified as to this controversy and said appellant had tried to get respondent to pay one-half of the expenses of maintaining that portion of the canal where the flume had formerly been but that respondent refused to do so under its interpretation of the contract. There was no evidence that appellant had, since the removal of the flume, ever billed respondent for the $6, but some of its secretaries in settlements of accounts with respondent received $6 as payment of respondent's share of the expenses for that part of the canal. Can it be said that under such a state of facts that both parties had interpreted the contract after the removal of the flume as obligating the respondent to pay $6 as its portion of the expenses for the upkeep of the canal where the flume had formerly been? We think not. A practical construction of the terms of a

contract by the parties thereto implies a mutual and identical interpretation. Here appellant from the time of the removal of the flume controverted respondent's interpretation. True there were some acceptances by some of appellant's secretaries of the $6 proffered by respondent in its settlements of accounts but such acceptances are just as consistent with the theory that since respondent refused to pay more they took what they could get as it is with the contention that appellant interpreted the contract in the same manner as respondent, and in view of the fact that appellant has since the removal of the flume tried to get respondent to pay an equal share of the expenses incurred, it is probable that the reason of such acceptances of the $6 was inability to collect more rather than an indication of a practical interpretation of the contract. As stated in 17 C. J. S., Contracts, § 325, subdiv. b, page 764:

"To warrant the court in according great weight to, or adopting, a practical construction by the parties, it is necessary and sufficient that each party shall have placed the same construction on the contract. While the construction placed by one party on his own language in a contract is the highest evidence of his own intention, the meaning of the contract cannot be established by the construction placed on it by one of the parties, unless such interpretation has been made to and relied on by the other party, or has been known to and acquiesced in by the other party, * * *."

In the instant case, as we have shown there was no mutual construction of the contract, nor was there acquiescence by appellant to respondent's interpretation. The court therefore erred in finding that respondent's obligation to pay the expenses of maintaining that part of the canal where the flume had formerly been was measured by the provision in the contract obligating it to pay $6 per annum and in holding that Sec. 100-1-9, U. C. A. which provides for contribution between joint owners of ditches or reservoirs did not apply.

Reversed and remanded with instructions to proceed in accordance with the opinion expressed herein. Costs to appellant.

PRATT and WOLFE, JJ., concur.

LATIMER, Justice (dissenting).

I dissent. While I appreciate that by present-day standards the contract appears inequitable and unjust, this is not sufficient reason to justify this court in deciding the contract was cancelled by the removal of the flume. This is the effect of the majority opinion, as it holds the provisions of Sec. 100-1-9, U. C. A., 1943 are controlling and the rights created by the contract extinguished. I would be only too happy to concur in the results if I could read and interpret the contract as does the author of the majority opinion. However, in order to arrive at the decision as rendered by the majority, it appears that rules of construction are violated, too much emphasis placed on too few words, common words given forced meanings, and a contract revised, to the extent of abrogation.

I will first dispose of the last principle discussed by Mr. Justice WADE, as I concur in that portion of his opinion, although I hardly see how it has any materiality under the holding of the majority opinion. In addition to the evidence mentioned in his opinion, which was sufficient to show there was not a mutual interpretation, there is an exhibit in the file which strengthens this conclusion. This exhibit is a letter written June 16, 1926, wherein the respondent company acknowledges receipt of a communication from appellant company protesting the construction of the contract as contended for by respondent, and asking that the matter be arbitrated in accordance with the terms of the contract. In this communication, the respondent company refuses to submit the question to arbitration. Furthermore, I find no place in the record where the trial court finds the contract ambiguous and subject to interpretation by mutual conduct of the parties. As stated by Mr. Justice WADE, the finding by the trial court was to the effect that the contract was unambiguous, and if the trial court can be sustained in this finding the conduct of the parties is of no particular importance.

There is no serious dispute as to the general principles of law governing the construction of contracts. It is conceded that generally speaking, the cardinal rule in the interpretation of contracts is to ascertain the intention of the parties, from the wording of the contract, and to give effect to that intention if it can be done consistently with legal principles. In interpreting an agreement, a court is not at liberty to revise a contract while proposing to construe it. Neither can it create a new contract nor do away with the old one under the guise of interpretation. I am afraid the majority decision has done just that. The contract involved in this action should be interpreted as a whole, and the meaning gathered from the entire contract and all provisions should be so interpreted as to harmonize with each other. Insofar as possible this court should place itself in the situation occupied by the parties at the time the contract was executed. If we consider the contract with these principles in mind, it seems to the writer that the trial court correctly interpreted the terms and conditions and properly arrived at the intention of the parties.

My reasons for coming to this conclusion are these. Considering the recital provisions of the contract first, and I suggest this for the reason that while recitals in a written contract do not have the force of contract stipulations, nevertheless if they are clear and the operative part not clear, they (recital provisions) are of assistance in determining intent.

The first recital is to the effect that the appellant is interested in two separate projects: (1) It is desirous of enlarging the canal at certain points, and (2) placing a flume in the bed at a point near the head of the canal. The second recital is (1) that the annual cost of cleaning the canal at the points where appellant was to enlarge the canal was 14¢ per share, and (2) the annual cost of cleaning the same at the place of the flume amounted to about $6.

With these recitals in mind, the operative part of the contract more nearly approaches certainty. Broken down as between the parties, I find respondent consenting to the

enlargement of the canal and the construction of the flume, and for payment for the enlargement we find the following language:

"* * * said first party (Swan Creek Canal Company) hereby consents * * * annually for the period of five years to pay in cash or labor at the option of said first party, fourteen cents per share on the outstanding capital stock of said first party, toward the expenses necessary in cleaning and repairing *such enlarged parts of said canal,* and *forever after the expiration of said period of five years,* the expenses of cleaning and repairing said canal *at such points* shall be borne by said parties in proportion to their respective interests in and to the waters of the same * * *." (Italics added.)

To the writer of the language "such points" refers to the points where appellant enlarged the canal, not to the 1800-foot section where the flume was installed.

The above provision is then followed by this one stating the respondent's liability for payment of expenses on that portion of the canal where the flume was to be placed:

"* * * Said first party (Swan Creek Canal Company) also agreed to pay to said second party the sum of $6.00 per annum in *lieu of the expenses of cleaning and repairing* said canal *where said flume is to be located, so long as* the said second party shall maintain *such flume and canal where same is placed* in good repair and condition." (Italics added.)

I agree with Mr. Justice WADE that "so long as" are words of limitation, and if this were all the provisions of the contract, the decision would be correct. However, I ascribe a different meaning to the latter phrase, "shall maintain such flume and canal where same is placed," and in doing this I give force and effect to terms and provisions set forth in subsequent parts of the contract.

We need not go into extended reasoning to determine whether or not the "and" as used in the sentence was intended by the parties to be used in the disjunctive or copulative sense. It appears to me that here again the duties are two-fold, and the words and phrases are used with that in mind. That is, the appellant is required to maintain both the flume and the canal. Not the canal "while the flume is

placed," but "where the flume is placed." It will be noted that the $6 was paid in lieu of the expenses of cleaning and repairing the canal at this place. If the recital clause is accurate in showing the cost of cleaning and maintaining this section of the canal at $6 per annum, then the requirement that the $6 be paid so long as appellant maintains either the flume or the canal where it is placed is entirely reasonable and consistent and equitable when we consider the date of the contract.

The next provision of any importance to this decision is the following:

"Said second party in consideration of the premises and of the covenants and agreements herein of said first party, hereby agrees to use due care and caution *in enlarging said canal* and *in building said flume* and to do so in such manner as not to injure or weaken the bed or banks of the same and *to forever keep said canal at said points in good repair and condition* and to hold said first party free from any and all injury, loss or damage on account of any such change in said canal  *  *  *." (Italics added.)

It will be noted from this that we are again faced with the same two requirements. The appellant agreeing to use due care and caution in (1) enlarging said canal and (2) building said flume and to forever keep said canal at said points in good repair and condition. "At said points" to me includes both the places where the enlargement is performed and where the flume is placed.

The next provision adds further information on the intention of the parties:

"Said second party further agrees to maintain the *bed and banks of said canal* at *the place of said flume* in as good condition as at present and in such condition *that if said flume should break or be removed the waters of said canal would flow through said canal the same as at present, etc.,*  *  *  *." (Italics added.)

Here, again, we have words which indicate an intention to require appellant to keep the canal in good condition. The language clearly indicates the parties considered a removal of the flume and in that event appellant agreed that

if the flume should be removed it would maintain the banks and bed of the canal at the place of removal, in such condition that the waters would flow there the same as at the time the contract was executed.

If we approach the problem as I visualize the position of the parties in 1903, as indicated by the wording of the contract, the following situation develops. Appellant was desirous of obtaining additional water through the canal system owned by respondent. Respondent was not adverse to this, but was only willing to contribute to the additional upkeep, the amount it had been costing prior to the enlargement except for that portion of the ditch below the flume. For the lower portion, respondent agreed that after five years the cost of maintaining the lower portion would be determined by the proportionate part of the water received. Had the parties intended to have the same provision apply to that portion of the canal where the flume was constructed, there would have been no reason to limit the contribution to the lower part. Further, there would have been no reason to segregate the costs and expenses on the upper and lower parts of the canal. The parties had the foresight to include the lower portion of the canal in the provision that each party should share in the increased costs, but expressly excluded the upper or flume portion. It seems entirely proper to assume that when the parties included only the lower part of the canal when dealing with sharing the expenses on a proportionate basis, they intended to exclude the upper portion from the provision for such contribution.

Had they intended to apply a different rate while the flume was in place and after it was removed, it would have been very easy to have so declared. The language of the contract leads me to believe they intended to require a contribution on the lower part of the canal, but to fix $6.00 as the flat amount to be paid, regardless of the presence or absence of the flume.

McDONOUGH, C. J., concurs in the dissenting opinion of Mr. Justice LATIMER.