JOHN M. BURDINE AND JOHN B. REILLY, *Appellants*, v. JOHN SEWELL AND E. G. SEWELL, AS CO-PARTNERS DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF JOHN SEWELL & BROTHER, *Appellees*.

Opinion Filed July 27, 1926.

Petition for rehearing denied September 22 ,1926.

1. An easement has been defined to be "a privilege without profit, which the owner of one tenement has a right to enjoy in respect to that tenement in or over the tenement of another person, whereof the latter is obliged to suffer or refrain from doing something on his own tenement for the advantage of the former." Jones on Easements, Sec. 1.

2. The essential elements or qualities of easements are : "first, they are incorporeal; second, they are imposed upon corporeal property ; third, they confer no right to a participation in the profits arising from such property; fourth, they are imposed for the benefit of corporeal property; fifth, there must be two distinct tenements—the dominant, to which the right belongs, and the servient, upon which the obligation rests." Jones on Easements, Sec. 1.

3. An easement is distinguished from a license, though it is often difficult to make out whether á particular case is the one or the other. There are, however, certain fundamental principles underlying most cases, which enable courts to distinguish an easement from a license, when construed in the light of surrounding circumstances.
   "An easement implies an interest in land, which a license does not." Jones on Easements, Sec. 65.

4. An easement being an interest in land, can be created only by grant, the existence of which may be established by the production of a deed expressly declaring it, or may be inferred by construction, from the terms and effect of an existing deed, or evidence of the grant may be derived from its

having been so long enjoyed as to be regarded as proof that a grant was originally made, though no deed is produced which contains it. In other words, there are three ways in which an easement may be created—first, by express grant; second, by implication; third, by prescription." 9 R. C. L., p. 745.

5. One who secures from the owner of property authority or permission to use a passage-way over such property, and continues the use thereof under such permission, cannot successfully claim such to be a way or easement by prescription.

6. The expressions, "for and during such time," and "for so long as" are equivalent to the term "temporarily."

7. "Where the parties have fully manifested an intention to limit the duration of the right of passage, it is the duty of the courts to enforce that limitation and not to disregard it by giving a perpetual right where only a determinable one was intended." 19 C. J. 969.

8. "A convenant is said to run with the land when either the liability to perform it or right to take advantage of it passes to the vendee or other assignee of the land." 7 R. C. L. 1099.

9. In an agreement between Fort Dallas Land Company and John Sewell, the owners respectively of Lot numbered One (1) and Lot numbered Two (2) of Block One Hundred Twenty-two (122) of City of Miami, it was agreed by Fort Dallas Land Company, that, in consideration of the mutuality thereof and of One Dollar, it would allow to remain open an alley ten feet wide along the South end of Lot One (1), and that Sewell might, without further rent, have the right of passage over said alley to and from Lot Two (2) *for and during such time* as said Sewell kept open and allowed said Company a right-of-way and easement over an extension of said ten-foot alley across the south end of said Lot Two (2), etc., Sewell agreeing to open and allow to remain open across the south end of Lot Two (2) a ten-foot alley, and to give Fort Dallas Land Company and its tenants an easement over

the same without rent or charge, *for so long as* the alley over Lot One (1) of said Block remained open. The agreement also contained a provision as follows: "It is understood and agreed that the alley or way hereinabove provided for is and shall remain a private way for the use of said Sewell and Fort Dallas Land Company and their tenants and shall not be used or permitted to be used by adjoining owners or other persons unless and until such adjoining owners or other persons shall enter into an agreement in writing with the parties hereto covering the permissive use of said way."

*Held*: That such agreement did not burden the respective lots with a permanent easement appurtenant, but that it gave to the respective parties a personal license or privilege of limited duration to use the alley provided for, and that it was subject to be revoked by either party at any time.

10. "An express license may be created by deed or other instru ment in writing, or orally." Enc. of Law (2 ed.), vol. 18, 1131.

An Appeal from the Circuit Court for Dade County; H. Pierre Branning, Judge.

Reversed.

*R. F. Burdine*, for Appellants;

*Price, Price, Neeley & Kehoe* and *A. B. Small*, for Appellees.

### STATEMENT.

Prior to June 23, 1899, Fort Dallas Land Company, a corporation, was the owner of Lots numbered One (1) and Two (2) of Block One Hundred Twenty-two (122) North, in the City of Miami. These lots had a frontage to the North on Twelfth Street. Lot One, being a corner lot, had also a frontage on Avenue C to the East.

According to the official plat, there was no alley through Block 122 at the rear of these lots.

On June 23, 1899, Fort Dallas Land Company sold and conveyed Lot 2 of said Block 122, to John Sewell and E. G. Sewell, who immediately went into possession and became the occupants of the lot, building thereon a store building which they have ever since occupied as retail merchants.

There was no way of reaching Avenue C from the rear of this store building on Lot 2 except across an open space on the South end of Lot 1. Fort Dallas Land Company had a building on Lot 1, which was occupied by its tenants, and the space to the rear was used by these tenants, and also by the Sewells, in reaching Avenue C from the rear of these buildings.

A few years after the Sewells purchased Lot 2, there was a fence erected along the East line of Lot 1, from the rear of the building of Fort Dallas Land Company to a building on another lot in said Block 122, to the rear of Lot 1. This fence cut off the way that had been used by the Sewells for reaching the rear of Lot 2 from Avenue C. They took up the matter with J. R. Parrott, the President of Fort Dallas Land Company, a corporation, the owner of Lot 1, and from whom they had purchased Lot 2.

After these negotiations, the following agreement, relative to the use of the space at the rear of Lot 1 as an alley, was, on December 26, 1905, entered into between the Fort Dallas Land Company and John Sewell, to-wit:

"This agreement, made this 26th day of December, A. D. 1905, by and between the Fort Dallas Land Company, a corporation under the laws of the State of Florida, here-inafter called the Company, and John Sewell, of Miami, Florida;

"Witnesseth: That in consideration of the mutuality hereof, and the further consideration of One Dollar paid

by John Sewell to said Company, the receipt whereof is hereby acknowledged, said parties have agreed as follows:

Said Fort Dallas Land Company agrees to allow to remain open an alley ten feet wide along the South line of Lot One (1) of Block One Hundred Twenty-two (122), in the City of Miami, and that said Sewell may, without any further rent, have the right of passage over said alley to and from his Lot Number Two (2) of said Block One Hundred Twenty-two (122), for and during such time as said Sewell keeps open and allows said Company a right of way and easement over an extension of said ten foot alley across the South end of said Lot Two (2) of Block One Hundred Twenty-two (122), and does not permit the use of said alley by adjoining property owners unless and until such owners shall grant to the Company and its tenants a like right of use and easement over lands owned by them.

"Said Sewell agrees to open and allow to remain open across the South end of Lot Two (2) of Block One Hundred Twenty-two (122), a ten foot alley, and to give said Company and its tenants an easement over the same without rent or charge, for so long as the alley over Lot One of said Block remains open, and further agrees not to allow the use of said alley by adjoining property owners or their tenants, other than the Company and its tenants, unless and until such owners also open and allow the use of a like alley in extension of said alley over their lands.

"It is understood and agreed that the alley or way hereinabove provided for is and shall remain a private way for the use of said Sewell and said Fort Dallas Land Company and their tenants, and shall not be used or permitted to be used by adjoining owners or other persons unless and until such adjoining owners or other person shall enter into an agreement in writing with the parties hereto cov-

ering the permissive use of said way; and further, that said Sewell shall keep and maintain a gate over and across the entrance to said way and a sign in a conspicuous place at the entrance to said way, indicating that it is a private way.

"In Witness Whereof, said Fort Dallas Land Company has caused these presents to be signed by J. R. Parrott, its President, and its corporate seal to be hereto affixed, and said John Sewell has hereunto set his hand and seal the day and year first above written.

(Seal of Fort Dallas Land Co.)

Fort Dallas Land Company
By J. R. Parrott, President

John B. Reilly ) As to John
E. C. Welsh    ) Sewell     John Sewell   (Seal)"

Subsequent to the making of this agreement, the fence on the East line of Lot 1 was opened and a gate erected at the entrance of the alley as provided for in the agreement, the gate continuing there for some time, and the alley was used by the owners of Lot 2' and the tenants of Fort Dallas Land Company, the owner of Lot 1.

Some years after the execution of the agreement relative to the use of the alley, the Fort Dallas Land Company, a corporation, sold Lot 1 of Block 122 to Model Land Company, a corporation, which subsequently sold same to John B. Reilly, the stockholders of the Model Land Company, a corporation, being practically the same as the stockholders of the Fort Dallas Land Company, a corporation, and John B. Reilly being the resident agent of both said corporations. In the year 1904 John M. Burdine, or the firm of Burdine and Quarterman, of which he was a member, became a tenant of the building on Lot 1. He, or his

firm, continued as a tenant of the respective owners of the building on Lot 1 until 1919, when he leased the entire lot from John B. Reilly, who was then the owner of the same, this lease being a thirty years' lease. After acquiring this long term lease on Lot 1, John M. Burdine, with the intention of utilizing the entire lot for erecting a building, began the construction of a stone wall along the West line of the lot, thus obstructing the West end of the alley across the South end of the lot mentioned in the agreement between the Fort Dallas Land Company and John Sewell.

Upon the erection of this obstruction, John Sewell and E. G. Sewell, co-partners trading as John Sewell & Brother, on October 23, 1919, filed in the Circuit Court of Dade County, Florida, a bill for injunction, praying for an order restraining and enjoining John M. Burdine from closing, or attempting to close, the alley along the South line of Lot 1.

The facts set forth in the bill of complaint are substantially as stated above, with further allegations as to the use of the alley by the complainants prior to the written contract or agreement above quoted, this agreement being attached to the bill of complaint as Exhibit "A". It is also alleged that the written contract was made to continue and confirm the prior verbal agreement. The bill also alleges that the complainants had, from the time of their purchase of Lot 2, occupied, used, possessed and maintained the said alley for the purpose of reaching the rear of Lot 2 from Avenue C, and that the alley had also during such time been used by the owners of Lot 1 and their tenants, including respondent John M. Burdine, and that the agreement, after its execution, was recorded in the Miscellaneous Records of Dade County, and that John B. Reilly, who purchased the said lot 1, and John M. Burdine, the lessor thereof, each had notice of the alleged easement

claimed by the complainants over said lot at the time their respective interests were acquired.

Upon the filing of the bill of complaint and before answer was filed, and application was made for an order temporarily enjoining respondent John M. Burdine from closing, or attempting to close, the said alley ten feet in width across the south end of Lot 1 of Block 122. This application was denied and the bill of complaint dismissed by the Chancellor. Upon appeal from the order of the Court below, denying the injunction and dismissing the bill of complaint, the case was reversed. See John Sewell & Bro. v. Burdine, 80 Fla. 718, 87 South. Rep. 143.

After the case was reversed and remanded to the court below, respondent John M. Burdine, filed his answer, as did also John B. Reilly, who by order of the court, upon stipulation between counsel, was made a party respondent and permitted to file answer. The answers of the respondents were practically the same, and there was incorporated in each a demurrer to certain paragraphs of the bill of complaint.

The answers of respondents maintain that there was only a mere personal privilege or license granted John Sewell and his tenants to use the alley on Lot 1, which was subject to be revoked, and which was in fact revoked when the property was sold by the Fort Dallas Land Company, a corporation.

The answers deny that the intent and purpose of the written agreement was as claimed by complainants in their bill of complaint, and also deny that complainants had been in the occupancy and possession of the said alleged alley across Lot 1 by virtue of any permanent right of easement.

It is further claimed in the respective answers that the complainants had failed to comply with the conditions of

the agreement, and had violated the agreement in various respects.

On the filing of the answers, testimony was taken, and the case having been considered by the court below upon bill, answer and testimony, a final decree was rendered granting the permanent restraining order as prayed for in the bill of complaint. From this final decree the respondents, John M. Burdine and John B. Reilly, have appealed.

## OPINION.

CAMPBELL, Circuit Judge (after stating the facts).

The appellant did not file assignment of errors. The appellees have not moved the court to dismiss because of this omission. An examination of the entire record indicates that there is merit in the appeal, and this court will not, *ex mero motu*, dismiss the appeal because of this technical omission.

The appeal is taken from a final decree rendered after consideration of the case upon bill of complaint, answer and testimony. There being no assignment of errors, we will proceed to consider the case as a whole, as shown from the record, to determine whether or not the court below was in error in entering the final decree.

On the former appeal this court had before it only the bill of complaint, an ex parte affidavit filed by complainants, and the order of the court below denying the injunction and dismissing the bill of complaint.

In reversing the case on the record before us at that time, we said, in the body of the majority opinion: "We regard the agreement as one creating an easement over Lots 1 and 2. Each lot is burdened by the agreement with an easement over it for the benefit of the owner or occupant of the owner, one which may be extinguished of

course by abandonment or mutual agreement.'' John Sewell & Bro. v. Burdine, 80 Fla. 718, 87 South Rep. 144 (text).

In considering the case on this appeal, we have before us the case upon its merits, as presented by the record, consisting of the bill of complaint, answer and testimony.

The final decree of the court below perpetually enjoins and restrains the respondent, John M. Burdine, the lessor, and John B. Reilly, the owner of Lot One (1) of Block One Hundred Twenty-two (122), from closing, or attempting to close, the alley-way described in the bill of complaint, or in any manner whatsoever interfering, or attempting to interfere, with the rights and privileges of the complainants in the use of such alley-way. In other words, the decree adjudicates the right and privilege of the complainants in Lot 1 as being a permanent easement.

It will be necessary, therefore, for use to determine from all the facts and circumstances as found in the entire record of this case, whether the complainants have a permanent easement, or whether their right to the use of the alley is a license or privilege of limited duration.

An easement has been defined to be ''a privilege without profit, which the owner of one tenement has a right to enjoy in respect to that tenement in or over the tenement of another person, whereof the latter is obliged to suffer or refrain from doing something on his own tenement for the advantage of the former.'' Jones on Easements, Sec. 1; 9 R. C. L. 735, par. 2.

The essential elements or qualities of easements are: ''first, they are incorporeal; second, they are imposed upon corporeal property; third, they confer no right to a participation in the profits arising from such property; fourth, they are imposed for the benefit of corporeal property; fifth, there must be two distinct tenements, the dominant, to

which the right belongs, and the servient, upon which the obligation rests.'' Jones on Easements, Sec. 1; 9 R. C. L. 735, par. 3.

''An easement is distinguished from a license, though it is often difficult to make out whether a particular case is the one or the other. There are, however, certain fundamental principles underlying most cases, which enable courts to distinguish an easement from a license, when construed in the light of surrounding circumstances. An easement implies an interest in land, which a license does not.'' Jones on Easements, Sec. 65.

''An easement being an interest in land, can be created only by grant, the existence of which may be established by the production of a deed expressly declaring it, or may be inferred by construction, from the terms and effect of an existing deed, or evidence of the grant may be derived from its having been so long enjoyed as to be regarded as proof that a grant was originally made, though no deed is produced which contains it. In other words, there are three ways in which an easement may be created, first by express grant; second by implication; third, by prescription.'' 9 R. C. L. 745, par. 14.

There is some contention that the Sewells have an easement, by prescription, over the alley in controversy; but this contention is untenable. It is alleged in the bill of complaint, admitted in the answers, and proved by the testimony, that the use of the alley by the complainants was a permissive use. One who secures from the owner of property authority or permission to use a passageway over such property, and continues the use thereof under such permission, he cannot successfully claim such to be a way or easement by prescription. 19 C. J. 887, par. 53; 9 R. C. L. 778, par. 37.

''Where a deed granted the use of a passageway so long

as it was used as a passway, and grantee used in the way under the deed and did not repudidate the license granted in the deed, or apprise the grantor that he was using it under a claim of right, such use could not ripen into a prescriptive right.'' Reese Howell Co. v. Brown, 48 Utah. 142, 158 Pac. Rep. 684.

Whatever right the complainants have in the alley over the South end of Lot 1, is given them in the written agreement attached to the bill of complaint as Exhibit "A" and quoted in full in the statement of this case.

An examination of this agreement reveals that it was made between, and apparently for the benefit of, Fort Dallas Land Company, a corporation, and John Sewell, and their respective tenants. It provides that the alley "is and shall remain a private way for the use of the said Sewell and said Fort Dallas Land Company and their tenants," etc. There are no words in the agreement to indicate that the rights of the respective parties therein are to extend to their successors in title. In other words, the covenants contained in the agreement are *personal* covenants, rather than covenants *running with the respective lots*.

It appears from the testimony that the complainants had, from the time they built their store on Lot 2, used the open space to the rear of Lot 1 in reaching Avenue C from the rear of their store. It also appears that this was permitted by the Fort Dallas Land Company, and that the alley was also used by its tenants. Some time prior to December 26, 1905, a fence was constructed along the East line of Lot 1, which closed this open space that had been used as a passageway. The complainants then approached the Fort Dallas Land Company, through J. R. Parrott, its President, complaining of the inconvenience they were suffering by reason of the closing up of this alley they had been using across Lot 1 to reach Avenue C. This con-

ference resulted in the execution of the instrument under which the complainants now claim an easement.

Was it the intention of the parties to this agreement to create a permanent easement appurtenant over the respective lots, or was it intended to limit the duration of the right of passage over the alley provided for?

It appears from the agreement that the Fort Dallas Land Company agreed "to allow to remain open an alley ten feet wide along the south line of Lot One (1) of Block One Hundred and Twenty-two (122), in the City of Miami, and that said Sewell may, without any further rent, have the right of passage over said alley to and from his Lot Number Two (2) of said Block One Hundred Twenty-two (122), *for and during such time* as said Sewell keeps open and allows said Company a right of way and easement over an extension of said ten feet alley across the south end of said Lot Two (2) of Block One Hundred Twenty-two (122)," etc.; and that said Sewell agrees to open and allow to remain open across the south end of Lot Two (2) of Block One Hundred Twenty-two (122), a ten-foot alley, and to give said Company and its tenants an easement over the alley without rent or charge, *for so long as* the alley over Lot One of said Block remains open," etc. (*italics* supplied).

From above quoted extracts of the agreement it does not seem to have been contemplated by the parties that the privilege granted to each was to be permanent; but rather, that same might be terminated by either party. Sewell granted permission to the Company to use the alley over his lot "for so long as" the Company kept open and permitted him to use an alley on its lot. The Company promised to keep open the alley on the south line of Lot 1 "for and during such time" as Sewell kept open and allowed

the Company a right-of-way and easement over an extension of said ten-foot alley across the south end of Lot 2.

The words "for" and "during" as used in this agreement, have the same meaning. (Shannon v. City of Omaha, 72 Neb. 281, 100 N. W. Rep. 298, 299). And they are both used here for the purpose of creating a limitation upon the duration of the right to use the alley.

The expressions, "for and during such time," and "for so long as," are equivalent to the term "temporarily." State v. Cunningham, 75 Vt. 332, 55 Atl. Rep. 654 (text).

Under the agreement, all that Sewell need do to revoke the privilege granted the Company, was to close the alley on his lot. If the Company desired to revoke the privilege granted Sewell, it had only to close the alley on its lot.

Sewell evidently understood that under the agreement the Company had the right to close the alley over Lot 1, and, therefore, he only agreed to allow the Company the right to an alley over Lot 2 "for so long as" the alley on Lot 1 remained open.

There is a further provision of the agreement which indicates that it was not the intention of the parties, that the alley provided for be an easement appurtenant to and following the respective lots. This provision is as follows: "It is understood and agreed that the alley or way hereinabove provided for is and shall remain a private way for the use of said Sewell and said Fort Dallas Land Company and their tenants."

If the parties really intended to grant to each other a permanent easement appurtenant to the dominant tenement in the respective lots, it is possible that, under the provisions of Section 3796 of Revised General Statutes of Florida, the words "heirs, successors and assigns," etc., need not have been used, as that statute provides as follows: "where any real estate shall hereafter by conveyed

or granted without there being used in the conveyance or grant any words of limitation, such as heirs or successors, or similar words, such conveyance or grant shall be construed to pass the fee simple or other whole estate or interest which the grantor had power to dispose of in the real estate conveyed or granted, unless a contrary intention shall appear in the conveyance or grant.''

As we have already remarked, the agreement under consideration has no provisions that the rights granted therein pass to the successors in title of the respective parties, and had the agreement merely granted the privilege named, to the respective parties, without any words of limitation, it would probably have passed by such conveyance to the successor in title, and thus have created an easement appurtenant. But, as has been noted, the parties contemplated no such thing as their successors in title being entitled to the rights provided for. On the contrary, they fixed a limitation to the duration of their respective rights to use the alley by the terms of the agreement.

The circumstances under which this agreement was made, and the relationship between the President of the Fort Dallas Land Company and Sewell, indicate that the Company only intended to grant a personal privilege to John Sewell. It appears that J. R. Parrott, the President of the Company, and John Sewell were on very intimate terms, both having been in the employ of the East Coast Railway Company for a number of years. It further appears that Mr. Parrott was a business man and an attorney-at-law, a man who had evidently had considerable business experience. He of course must have known that a grant of an easement should be drawn and executed with the same formalities as a deed to real estate, an easement being an interest in land. He also knew that John Sewell and E. G. Sewell were cotenants of Lot 2, and that if an easement appurtenant was to be granted the Company over Lot 2, it should have been

executed by both co-tenants, and if an easement appur-
tenant was to be granted to the owners of Lot 2, over Lot
1, the grant of such easement should be made to both co-
tenants.    He also must have known that grants of ease-
ments appurtenant, being the same as grants to real estate,
should be recorded, and that before such recordation there
should be a proper acknowledgment.  Yet, the instrument
he prepared, or had prepared, only granted rights to John
Sewell, one of the co-tenants, and the right granted the
Company were made only by John Sewell.  There was not
even a·blank certificate for acknowledgment attached to
the agreement.

These facts and circumstances indicate very forcibly that
the agreement was intended to give, not an easement appur-
tenant to·the lots described, but only a personal license to
the respective parties to use a way, each over the lot of the
other.

It is true that John Sewell testified that Mr. Parrott, the
President of the Fort Dallas Land Company, said, "Yes,
John, I will sell you ten feet for a dollar, and fix it so they
cannot take it away from you.  Write me a letter, sending
me a dollar and I will send you a deed covering the ten
feet."   However, the instrument sent by the Company and
received, accepted and relied upon by the complainants, is
not a deed ·to ˙the ten feet right-of-way, but an agreement,
granting reciprocal personal privileges to the parties there-
to, or a revocable license.  "Where the parties have fully
manifested an intention to limit the duration of the right
of passage, it is the duty of the courts to enforce that lim-
itation and not to disregard it by giving a perpetual right
where only a determinable one was intended."   19 C. J.
969; Jones on Easement, par. 370; Batchelder v. State Cap-
ital Bank, 66 N. H. 386, 22 Atl. Rep. 592; Reese Howell
Co. v. Brown, Supra.

In the case of Batchelder v. State Capital Bank, supra,

there was a clause in the deed under consideration, grant-
ing a passageway over a certain lot, so long as it was used
as a passageway by the bank. The Supreme Court of New
Hampshire, in considering this clause, says: ''The stipula-
tion in the deed was a grant for a conditional use of the
passageway, and the plaintiff's right to its use ceased when
the bank ceased to use it.'' (See 22 Atl. Rep. 593, text).

The same court, in the same case, very aptly said: ''The
parties having defined the extent of the right, it cannot be
enlarged by implication,'' citing Warden v. Batch, 59
N. H. 468.

''A conveyance of land, which was accessible from the
public highway, provided that the grantee might have the
right to use in common with others as a passway, a strip
of land 11 feet wide, lying between the land conveyed and
the grantor's land, so long as the same was used by grantor
for the same purpose. *Held,* That no easement was created
by implication, and the pass-way might be closed as such,
at the pleasure of the grantor of the land conveyed.''
Batchelder v. State Capital Bank, *supra.*

''Provisions in a deed that the grantee shall construct
a drive way along the side of the granted lot, which the
grantors shall have the right to use for access with vehicles
to their adjoining lot, *so long as* friendly relations exist
between the parties, is but a personal covenant in the
nature of a license, terminable on friendly relations ceas-
ing.'' Gerling v. Lain, — Ill. —, 109 N. E. Rep. 972.
(Italics supplied.)

As has already been observed, there is nothing in the
agreement in the case at bar that would burden either lot
as the servient tenement to the other in the hands of a
subsequent vendee of such lot. Neither is there anything
in the agreement that gives the vendee of either lot a
doninat tenement in the alley across the other lot. In

other words, the covenants in the agreement under consideration do not run with the respective lots described.

"A covenant is said to run with the land when either the liability to perform it or right to take advantage of it passes to the vendee or other assignee of the land." 7 R. C. L. 1099; Gerling v. Lain, *supra*.

"To authorize the enforcement of a personal covenant against the grantee or assignee with notice of it, the instrument must be clear, unambiguous and certain, and of such a character that a court of equity can make an efficient decree and enforce it." Gerling v. Lain, *supra*.

"Where a deed granted the use of a passageway 'So long as it shall be used as a passageway,' the words 'So long as' implied a limitation in the grant, and conferred the right to terminate the use on the grantor, since while the grantee may at any time relinquish his right of passage, without consulting the grantor, the grantor's right to terminate must be expressed in the instrument." Reese Howell Co. v. Brown, *supra*.

In the case of Reese Howell Co. v. Brown, *supra*, the Utah court was considering a deed containing substantially the following clause: "Also a right-of-way along and through that certain alley or passageway situated 155 feet West of the Southeast corner of Lot 1 aforesaid (being in the West end and forming a part of the brick building now owned by the grantor herein) and running North from Fifth Street, as long as the same shall be used as a passageway, and the gates of which shall be closed from 6 P. M. until 7 A. M. each day, and the grantee herein is allowed the privilege of entering and passing through said alley at any time night or day, and be provided with a key to unlock the same, and said grantee is to see that the same is locked during the time herein mentioned when used by him or by his authority."

In a very interesting discussion, the supreme court of Utah, interpreting that agreement, says (see page —, 158 Pac. Rep.) : ''There certainly can be no dispute that the words in the grant, 'so long as,' etc., clearly imply a limitation upon the duration of the right of passage.'' And further, ''We think that where, as in the case at bar, the parties have all clearly manifested an intention to limit the duration of the right of passage, it is the duty of the courts to enforce that limitation and not to disregard it by giving a perpetual right where only a determinable one was intended. If therefore we consider the language of the deed when applied to the subject-matter of the grant, and in the light of what we have already stated, there seems but one conclusion permissible, and that is the right of passage through the passage-way or alley by the grantee and his successors continued 'so long as the same shall be used as a passage-way' and no longer, and by that was meant 'so long as' the *grantor* shall use it or permit its use, and not so long as the grantee shall use it, *nor yet that it shall continue until terminated by the joint act of both.''* (Italics supplied.)

After considering the entire record in this case, we think, and we so hold, that the agreement between the Fort Dallas Land Company, a corporation, and John Sewell, did not burden the respective lots with a permanent easement appurtenant, but that it gave to the respective parties a personal license or privilege of limited duration, to use the alley provided for, and that it was subject to be revoked by either party at any time. That being the case, Fort Dallas Land Company could revoke the license by conveying the land to another, and it or its successors, or its or their tenants, could revoke it by closing the alley on Lot 1.

Counsel for appellee contends, that if this agreement was only a license or personal privilege which could be revoked

at the pleasure of the party granting it, it was useless to have reduced the agreement to writing, and the fact that the parties saw fit to put their agreement in writing, shows that an easement appurtenant was intended.

There are numerous instances where parties, in granting a license for the use of, or entry upon land, have reduced their agreements to writing.

The fact that the parties to the agreement under consideration in this case reduced their understanding to writing, does not make it other than that which its language indicates, that is, as we have said, a personal license or privilege in the use of the alley.

"An express license may be created by deed or other instrument in writing, or orally." Enc. of Law (2d ed.) vol. 18, 1131.

There were reasons which made it important that the agreement between Fort Dallas Land Company, a corporation, and John Sewell should be reduced to writing. In the first place, the building on the Company's lot was occupied by tenants; the company had its offices in another city; there were rights which its tenants were to have, and there were rights which Sewell was to have over the property occupied by these tenants; should any question arise as to rights of either in the use of the alley while it remained open, this written agreement could be resorted to. Then, in the second place, Sewell was to prevent the use of the alley by adjoining owners, unless like privileges were granted by such owners, over lots owned by them. Furthermore, Sewell was to see to the erection of a gate, etc. There were so many provisions and conditions in the agreement, that to prevent misunderstandings and confusion, and to keep clearly in mind all the provisions of the agreement, the writing was not only important, but we may say necessary.

The respondent, John M. Burdine, as the lessor of Lot 1 of Block 122, North, had the right to close the alley, and thus revoke the license or privilege of Sewell. Under his lease he had the right to utilize the entire lot for building purposes. The court below, therefore, erred in granting the final decree permanently enjoining him and John B. Reilly, the owner, from interfering with the alley over the lot.

The conclusion we have reached makes it unnecessary to consider other questions raised by appellants in their brief.

The decree of the court below is reversed with directions to dismiss the bill of complaint.

Reversed.

WHITFIELD AND TERRELL AND BUFORD, J. J., concur.

ELLIS AND STRUM, J. J., dissent.

BROWN, C. J., disqualified.

STRUM, J., dissenting.—This case was previously before this Court on appeal from an order of the chancellor sustaining a demurrer and dismissing the bill of complaint. Sewell v. Burdine, 80 Fla. 718; 87 South. Rep. 144. In construing, at that time, the agreement here in controversy, this Court said: "We regard the agreement as one creating an easement over Lots 1 and 2, each lot is burdened by the agreement with an easement over it for the benefit of the owner, or occupant of the owner, one which may be extinguished of course by abandonment or mutual agreement."

The present opinion, after discussing the same agreement at length, concludes: "After considering the entire record in this case, we think, and we so hold, that the agree-

ment between the Fort Dallas Land Company, a corporation, and John Sewell, did not burden the respective lots with the permanent easement appurtenant, but that it gave to the respective parties a personal license or privilege of limited duration, to use the alley provided for, and that it was subject to be revoked by either party at any time.'' In both appeals the principal question has been whether the mooted agreement created an easement or merely a revocable personal license or privilege. It seems to me that the conclusion reached in the instant appeal is inconsistent with the construction placed by this Court upon the agreement in the former appeal. Until overruled, the opinion upon the former appeal settles the law of the case, and since the present opinion does not purport to overrule the former opinion, but merely reaches a different conclusion in construing the same instrument, I dissent, without expressing any opinion on the merits. See First Nat'l. Bank v. Ulmer, 66 Fla. 68; 67 Sou. Rep. 918 Christopher v. Mengen, 66 Fla. 467 (478) ; 63 Sou. Rep. 923; Fairlie v. Scott, 102 Sou. Rep. 247.

ELLIS, J., concurs.