MRS. FLORENCE DAUGHERTY v. E. A. LATHAM, *et al.,* as County Commissioners of Volusia County, and their successors in Office, and MRS. SALLIE LEE, Intervenor.

190 So. 742
En Banc
Opinion Filed July 25, 1939

478

*Metcalf & Finch,* for Appellant;

*John D. Broom* and *Thomas N. Tappy,* for Appellees.

BUFORD, J.—The appeal brings for review order or decree made by the circuit court on the 25th day of January, 1938, as follows:

"And now this cause coming on this day to be heard upon the motion of plaintiff by her solicitors, Metcalf & Finch, to—

"1. Set aside, vacate and hold for naught the order permitting Sallie Lee to intervene;

"2. Strike from the file the petition for intervention filed by Sallie Lee;

"3. Strike from the file the answer and counterclaim filed by Sallie Lee; and

"4. To make and cause to be entered a final decree upon the pleadings and proof; and the court having heard argument by the respective parties and being advised in the premises, it is thereupon

"ORDERED, ADJUDGED AND DECREED that said motion be and the same is hereby denied."

This is the second appearance of this litigation in this Court. See Daugherty v. Latham, *et al.,* 128 Fla. 271, 174 Sou. 317. A syllabus by the Court in this case is: "Dismissal for want of equity of bill to enjoin closing of a public highway held erroneous, where complainant alleged that highway ·was ·her only means of ingress and egress to

her farm, that closing would deprive her of means to transport her farm products and necessities of life to market, and that highway was closed for benefit of other private property owners and in an effort to deprive complainant of highway's use."

The record shows that certain .citizens including the intervenor, Sallie Lee, petitioned the County Commissioners of Volusia County, as follows:

"To the Honorable Board of County Commissioners of Volusia County, Florida, Greeting:

"We, the undersigned, citizens and free-holders living in the vicinity of the road herein prayed to be abandoned would respectfully represent unto your Honorable Body that it is necessary and expedient that a public road be abandoned as follows:

"Beginning at a point in the South line of the 'Perkins Highway, 587.5 feet easterly from the west line of lot 5, subdivision of M. E. Levy Grant, per map book 2, page 154. Thence S. 42 degrees 45 Min. East 210 feet, thence south 25 degrees 30 min. East 248.4 feet to the south line of said lot 5. Wherefore, we pray that your . Honorable Body issue an order directing to three disinterested free-holders of Volusia County, Florida, to view and mark out the said road to be abandoned, and that after said road is marked out by said viewers, and their report made of the same is accepted, that your Honorable Body will after giving notice thereof as required by law, make an order for the abandonment of said road, and declaring the same to be no longer a public road.

"Said road having been ........ feet wide and known as ........ Road No. 1.

"All of which is respectfully submitted by the undersigned petitioners, on this the 31st day of July, A. D. 1935."

Other petitions of like character were also filed.

Viewers were appointed and reported. Thereafter, certain citizens and free-holders living in the vicinity of the old road filed objections to the abandonment of the old road and establishment of a new road.

When the County Commissioners ordered the road changed, or the abandonment of the old road and the laying out of the new road, Mrs. Daugherty exhibited her bill of complaint in the circuit court seeking to enjoin the abandonment of the road referred to as the old road.

Motion to dismiss the bill of complaint was filed. The motion was granted.

Appeal was taken to this Court and the order reversed. Thereafter the county commissioners filed answer.

Paragraph 4 of the bill of complaint alleges:

"Plaintiff attaches hereto as Exhibit A, and makes a part hereof, a map of lots 5 to 8, inclusive, and Lots 30, 31 and 32 of the said subdivision of M. E. Levy Grant situated in Volusia County, Florida, recorded in said Plat Book 3, page 154 in said clerk's office, which map will be referred to hereinafter; that lot 5 shown on the said map, except the road running north and south thereon, is owned by Mrs. Sallie Lee and Blish D. Lee and the plaintiff owns a life estate in the W½ of Lot 6, which abuts upon the road which defendants have signified their intention to close and abandon, hereinafter described, and the W 2-3 in said Lot 7, and her residence is situated at the point marked 'residence' on said map; that she does not own any portion of the east one-half of Lot 6 or any portion of Lot 7 lying east of the line designated on said plat as 'dividing line' that the dotted line leading north from plaintiff's residence across lots 6 and 5 to the Perkins Highway represents a public highway which is about fifteen feet in width, and which

highway has been opened and traveled by the public in general at all times since the residence was erected, in which plaintiff now resides, which was fifty years before this date; that during the said period of time, the said highway has been, and still continues to be, the only road over and along which this plaintiff and her family residing in her said residence, can travel to reach a public highway leading to DeLand about six miles away, which is now, and has been for the past fifty years, the market where plaintiff and her husband and family have sold their crops and purchased their supplies; that it has been, and is now, the only road over which plaintiff's friends and relatives could travel in going to and from plaintiff's home, and has been during the same period of time, and now is, the only road over and along which plaintiff can transport her agricultural and grove products in order to reach the market; that the line designated as 'Perkins Highway' on the plat hereof attached is a paved public highway leading from DeLand, Florida, in a northeasterly direction to points far beyond plaintiff's residence, and is the only road which is available for plaintiff to travel in reaching the said city."

Answer to the fourth paragraph of the bill of complaint is as follows:

"That these defendants deny each and all of the allegations of the fourth paragraph of plaintiff's bill of complaint except these defendants admit the allegations of ownership of property described in said paragraph, as stated in said paragraph Fourth of the plaintiff's bill of complaint."

The seventh paragraph of the answer is as follows:

"That these defendants further answering the plaintiff's bill of complaint say that they would not discontinue the road described in the plaintiff's bill of complaint except and unless another road was provided so that the plaintiff could

go to and from her home over and upon the public roads described in her bill of complaint. That these defendants are willing to build and construct a better and more suitable road from the Perkins Highway to the place of residence of the plaintiff providing a sufficient right-of-way can be obtained therefor from the plaintiff and her relatives."

On October 15, 1937, Sallie Lee filed petition ·in the circuit court to be allowed to intervene. In her petition she alleged, *inter alia:*

"That she is the sole owner of lot number 5 of the Moses E. Levy Grant, Section 37, Township 16 South of Range 30 East, Volusia County, Florida; and that she has been such owner since 1890; that the said property was acquired by deed from her father and mother, John and Margaret Daugherty. That at the time she acquired the said property from her father there was an orange grove of between five and six acres which was located on the southeast corner of lot number 5; and that said lot contains 15 acres; that the balance of lot number 5 was wild, unimproved and vacant lands.

"2. And your petitioner further alleges that there never has been any dedication by her for the road across lot number 5 to the public use but that by the way of necessity the family of Florence Daugherty located on lot number 7 of the Moses E. Levy Grant have been permitted to use the said road, always with the understanding that should the balance of lot number 5 be used for cultivation of farm or citrus crops, that another road would be established, furnishing the family of Florence Daugherty and those living with her, a way of ingress and egress to Perkins Highway for the purpose of transporting her farm products to a near market, and she further alleges that in 1932 when an orange grove was set out on the remaining three-quarters

of lot number 5 and that when the same was discussed with John Daugherty, the husband of Florence Daugherty, as to the opening of another road to the property on lot number 7, owned by the said John Daugherty and now owned by the plaintiff, there was no objection to the change.

"3.    That in conformance with the statement in paragraph 2, your petitioner did deed to the county commissioners who are defendants in the above entitled cause, a road on the eastern border of lot number 5, a road to replace the former road which was used as a way of necessity; and that Charles Lungren, owner of lot number 31 of the Moses E. Levy Grant, did also deed a continuance of the road deeded on the east side of lot number 5, bringing said road to the property of Clara Burgin who is the daughter of plaintiff and lives with her, the terminal of which road would be at a corner of lot 31, owned by Charles Lungren; lot number 30 owned by Hardy Daugherty, and the east 500 feet of lot numbered 7, owned by Clara Burgin, the daughter of the plaintiff herein and who lives at the residence of the plaintiff.

"4.    And your petitioner further alleges that she has spent large sums of money in the planting and the cultivating of the new grove on lot number 5; and that she would suffer irreparable loss and damage if the old road across her orange grove is not closed and abandoned."

This petition for intervention was based upon the hypothesis that the road theretofore referred to in the proceedings was not a public road but was a way used by leave and license of Sally Lee and her predecessors in title and those using said way as a road used it with the understanding and on the conditon that should the balance of lot number 5 be used for cultivation of farm or citrus crops another road would be established furnishing the family of

Florence Daugherty and those living with her a way of egress and ingress to the Perkins Highway for the purpose of transportation.

It is further alleged:

"That in 1932 when an orange grove was set out on the remaining three-quarters of lot number 5, and that when the same was discussed with John Daugherty, the husband of Florence Daugherty, as to the opening of another road to the property on lot number 7, owned by the said John Daugherty and now owned by the plaintiff, there was no objection to the change."

Further allegations are made, the effect of which is to show the interest of Sallie Lee in the abandonment of the road involved and the establishment of a new road.

On October 15, 1937, without notice to the complainant Sallie Lee was by order of court allowed to intervene as a defendant and file her answer. She fined answer, and, *inter alia,* alleged:

"And your intervenor further alleges that there never has been any dedication by her for the road across lot number 5 to the public use but that by the way of necessity, the family of Florence Daugherty located on Lot number 7 of the Moses E. Levy Grant have been permitted to use the said road, always with the understanding that should the balance of lot number 5 be used for cultivation of farm or citrus crops, that another road would be established, furnishing the family of Florence Daugherty and those living with her, a way of ingress and egress to the Perkins Highway for the purpose of transporting her farm products to a near market, and she further alleges that in 1932 when an orange grove was set out on the remaining three-quarters of lot number 5, and that when the same was discussed with John Daugherty, the husband of Florence Daugherty,

as to the opening of another road to the property on lot number 7, owned by the said John Daugherty and now owned by the plaintiff, there was no objection to the change.

"That in conformance with the statement in paragraph 2 your intervenor did deed to the County Commissioners who are defendants in the above entitled cause, a road on the eastern border of lot number·5, a road to replace the former road which was used as a way of necessity and that Charles Lungren, owner of Lot number 31, of the Moses E. Levy Grant, did also deed a continuance of the road deeded on the east side of Lot number 5, bringing said road to the property of Clara Burgin who is the daughter of the plaintiff and lives with her; the terminal of which road would be at a corner of lot 31, owned by Charles Lungren; Lot number 30 owned by Hardy Daugherty; and the east 500 feet of Lot number 7 owned by Clara Burgin, the daughter of the plaintiff herein who lives at the residence of the plaintiff. And that there is no road from the home of Florence Daugherty across the Burgin property to the new road.

"And your intervener further alleges that she has spent large sums of money in the planting and the cultivating of the new grove on lot number 5 and that she would suffer irreparable loss and damage if the old road across her orange grove was not closed and abandoned.

"And your intervener further alleges that the only family served by the old road is the family of the plaintiff, and it is not a road serving a general community inasmuch as the beginning is on the Perkins Highway and the end at the home of the plaintiff.

"And your intervener further alleges that the road which has been deeded and accepted by the County Commissioners of Volusia County shows only a difference of about 800

feet farther travel than the road sought to be abandoned; and that the ingress and egress to and from the home of the plaintiff to the new road so deeded is only upon the land of the plaintiff or her daughter who lives with the plaintiff.

"And your intervener further alleges that prior to the building of the Perkins Highway there were divers and many trails and roads across the wild lands of that section and that at no time has your plaintiff been deprived of ingress an degress from her home by other means than upon the road which crosses your petitioner's orange grove on lot number 5.

"And your intervener further alleges that there has been no fraud, collusion or conspiracy between her or her agents and Mr. E. A. Latham, Chairman, and Mr. J. H. Graham, and Mr. Peter Gessner, members of the Board of County Commissioners of Volusia County, Florida. Which said conspiracy is more particularly set forth in paragraph 5 of the bill of complaint now on file in this cause; which said conspiracy is more particularly set forth in Section D, paragraph 7 of the bill of complaint. And that her purpose in deeding the new road was to prevent further loss and damage to her young grove located on lot number 5.

"And your intervener further alleges that the said road deeded by her to the County Commissioners and the continuance thereof to the Daugherty line by Charles Lungren will be a better road than the one now sought to be closed; and that the said new road will be graded, ditched and drained and placed in good condition for travel prior to the closing of the road referred to in the plaintiff's bill of complaint, and no injury whatsoever will be suffered by the plaintiff; and that she will have ingress and egress to and from her property for the purpose of transporting her farm products,

etc., to the markets in DeLand; and that the public use by the way of necessity of the road across lot number 5 will no longer exist.

"And your intervener is at all times ready to do equity to the rights of the plaintiff herein, and that in accordance with her former allegation in paragraph Seven, Section B, and that there will be no obstruction placed on the road over Lot number 5 until such time as complies with her agreement set forth in said paragraph Seven, Section B.

"That she is and always has been ready to furnish a means of egress and ingress to the property of the plaintiff. And will furnish such outlet if it should be determined that a road over the property of Clara Burgin and Byrd Burgin, both of whom reside with the plaintiff, is impossible or impractical, in which case then your intervener will establish a road on her own property on the boundary line of Lot Number Five in order to give such ingress and egress to the plaintiff. Such road being on the boundary lines and not bisecting Lot Number Five."

Motion was made to strike the petition of intervention and to vacate the order allowing intervention, to strike from the files the answer and counterclaim filed by Sallie Lee, and for final decree on the pleadings and testimony taken.

The order appealed from above quoted was then entered.

Appellants have stated several questions for our consideration in the bill filed here, but we think that to answer the fourth question stated is all that is required to dispose of this appeal. That question is stated as follows:

"Fourth Question: In an action against county commissioners to restrain the closing of a public highway, it appearing from the bill and proof thereof that the officials are not attempting to close the road for the public welfare but for the benefit of the owner of the land traversed by the

road and that if the road is closed plaintiff will be deprived of her right of ingress and egress to and from her home and the highway leading to market; and it further appearing that the court permitted the owner of the land traversed by the road to intervene without notice and file an answer as a party defendant asserting no legal reason for closing the road, should the court, upon motion of plaintiff, vacate the order of intervention, strike the answer filed by the intervener and render a final decree against the defendants as prayed?"

The intervener, by joining in the petition to the County Commissioners to abandon the road affirmatively recognized the road as a public highway. A public highway may be established by grant and acceptance or by prescription and usage. See Burdine v. Sewell, 92 Fla. 375, 109 Sou. 648; Atlantic Coast Line R. Co. v. Duval County, 114 Fla. 254, 154 Sou. 331.

When the petitions praying the abandonment of the old road and the establishment of a new road were presented the county commissioners assumed jurisdiction under the provisions of Section 1593 R. G. S., 2441 C. G. L., looking to the abandonment of the old road and the establishment of a new road. By this action the county commissioners affirmatively recognized the road involved as a public highway.

In 29 C. J. 520, Sec. 230, it is said: "As a foundation for a proceeding to vacate there must be a public highway actually existing. It is immaterial how such highways originated, whether by long usage, dedication, act of Congress of under authority of a special charter. The application to vacate may be limited to a part of a road, and in such case it is lawful to vacate such part only, although the ending left is not at a place of public resort or con-

venience, but the vacation cannot lawfully be less extensive than the application. In the absence of express statutory authority, mere private ways are, of course, not subject to vacation by the public authorities." Ample authority is cited to suppor the text, *supra*.

The complainant filed her bill of complaint, alleging sufficient facts to show that the road had become a public highway by prescription and usage.

There has been no final decree entered and, therefore, it is not within the province of this Court to now determine whether or not the evidence submitted, taken together with the allegations of the pleading and the record of what transpired hereinabove referred to is sufficient to support a decree holding this to be a public highway and subject to abandonment by the board of county commissioners.

If the road in question is not a public highway to such an extent as to provide the complainant in the court below with a perpetual easement in the use of the same, then the county commissioners are without power or jurisdiction to take any affirmative action toward closing the road and whether or not they had the power and jurisdiction to close and abandon that road would not affect the power and jurisdiction of the board to establish a public road where it is necessary for such road to be established for the benefit of the public.

Section 9 of the 1931 Chancery Practice Act provides:

"Section 9. Interventions.—Anyone claiming an interest in the litigation may at any time be permitted to assert his right by intervention, but the intervention shall be in subrogation to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion."

Mr. McCarthy, in his Florida Chancery Act, Annotated, 2nd Ed., says:

"It is generally said by the federal courts that the power to grant leave to intervene is discretionary, except where the petitioner claims an interest in specific property within the exclusve jurisdiction and subject to the exclusive disposition of the court, so that his interest can be enforced in no other way than by the action of that court, in which class of cases the right to intervene is absolute. See W. U. Tel. Co. v. U. S. & M. T. Co. (C. C. A. 8), 221 Fed. 545, and cases there cited. If this is a correct statement of the law, and if it is interpreted to mean that the intervener's rights must be such as can be enforced in no other way than by action of that particular court in that particular proceeding, it would confine the absolute right to intervene to a very narrow class of cases, namely, to those cases in which the intervener's interest would be bound without making him a party to the suit. It would mean, however, that such discretion as the equity court has under Section 9 in granting or denying leave to intervene is the limited discretion which the chancellor exercises in granting any kind of equitable relief."

In the note under Section 9, *supra,* the author also says: "Section 9 authorizes an intervention by any one claiming an interest in the litigation, not merely an interest in property in the custody of the court. The federal cases seem to give no satisfiactory definition of the term 'interest in the litigation.' In Consolidated Gas Co. v. Newton (D. C. N. Y.) 256 Fed. 238, it was said that it must be a legal interest; but that definition obviously is not accurate, because one having merely an equitable interest may intervene. See Nelson v. Tropical Land Co., 93 Fla. 203, 111 So. 512, for an example of an intervention by one having

equitable claim.   In Caldwell v. Guardian Trust Co. (C. C. A. 8), 26 Fed. (2d) 218, it was said that the interest must be direct and immediate, not remote.   Ebersbach v. Ringling, 100 Fla. 1270, 131 So. 148, is an example of such a remote interest."

So it appears that under the present chancery practice in this State no notice is required to be given of petition to intervene.

It must be borne in mind that this is not a suit to acquire a way of egress and ingress to lands being used as a home or for agricultural or stock-raising purposes under the provisions of Section 4999 R. G. S., 7088 C. G. L., and, therefore, the adjudication of the rights of the complainant and of the intervener as against one another in the road here under consideration are not involved in this suit and may not be injected into it.

The whole purpose of this suit is to determine and adjudicate whether or not the board of county commissioners in the exercise of the power, jurisdiction and discretion reposed in it may in its capacity as such board close and abandon the road involved and establish a new road in lieu thereof.   The question of private rights between the complainant and the intervener has no place in this suit.

It is settled in this jurisdiction that, the general rule subject to certain exceptions is that a party cannot be required to sue those against whom he does not wish to proceed nor state another case than that upon which he elects to rely.   If he fails to make necessary parties to the suit or does not make necessary averments as to those against whom he proceeds, his suit fails; but whether he will cure the defect by amendment rests with him."   See Doke & Wainwright v. Williams & Peek, 45 Fla. 248, 34 Sou. 569. In that case it was further said:

"As was said by Chancellor COOPER, in Stretch v. Stretch, *supra,* 'to make a new defendant to a bill claiming in a right not noticed by the bill would throw the rules of chancery pleading into utter confusion, for it would be to try rights without any issue between the parties.'

The law does not deny a remedy to third persons having an interest in the subject-matter of litigation, but it requires that it be so sought as to permit the rights of all parties to be duly presented to the court. They may, in cases demanding it, file an appropriate bill, which those with adverse interests will have opportunity to resist in the regular way. Stretch v. Stretch, *supra; Ex Parte* Printup, *supra.*"

After careful consideration of the petition for intervention. and the answer filed pursuant to permission granted by the Court, we must hold that the answer contains no allegations showing the intervener to have any justiciable interest in this litigation. Therefore, the motion to strike the answer should have been granted and the intervener should have been dismissed.

The order appealed from is, therefore, reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

TERRELL, C. J., and WHITFIELD, BROWN, CHAPMAN and THOMAS, J. J., concur.