350 So.2d 106 (1977)
FLORIDA POWER CORPORATION, Appellant,
v.
Gilbert D. SCUDDER, L.M. Folsom and Pauline Folsom, His Wife, Appellees.
L.M. FOLSOM and Pauline Folsom, His Wife, Appellants,
v.
Gilbert D. SCUDDER, et al., Appellees.
Nos. 76-1005 and 76-1036.
District Court of Appeal of Florida, Second District.
September 16, 1977.
Rehearing Denied October 21, 1977.
*107 C. Brent McCaghren of Winderweedle, Haines, Ward & Woodman, Winter Park, for Florida Power Corp.
Jack B. Nichols and R. Wayne Evans of Nichols & Tatich, Orlando, for Gilbert D. Scudder.
John H. Rhodes, Jr., Winter Garden, for L.M. Folsom and Pauline Folsom.
*108 SCHEB, Judge.
The principal issue in these consolidated appeals is whether the trial court erred in awarding compensatory and punitive damages against a utility company, Florida Power Corporation (FPC), for placing its electric poles and lines across privately owned lands without permission of the owners. Additionally, we address challenges to the compensation awarded the servient owners for a statutory way of necessity, as well as the court's rejection of claims to a common law easement or prescriptive right by the landowners served by the utility lines.
The essential facts are these: In April 1973 L.M. and Pauline Folsom acquired an eighty-acre tract of land in Lake County. Since the tract was landlocked, the Folsoms proceeded to construct a clay road from their property across land owned by Gilbert D. and Irene J. Scudder to an existing county road. While building the road the Folsoms requested FPC to install electric services to their new premises. A customer service representative of FPC, familiar with the area, visited the Folsoms who were in the process of having a road graded across the Scudders' property. Piles of clay were along the road and Mr. Folsom told FPC's representative that he was putting in the road and that it was his clay, and even mentioned how much it was all costing him. Based on these facts, the FPC representative mistakenly assumed the Folsoms owned or at least had legal right to use the property. Mr. Folsom never told the FPC representative that he did not own the property, nor did he disclose that he had no legal right to place the roadway across it. Acting upon Folsom's request and representations, and without making any independent determination of the ownership of the lands, FPC's employees erected poles and distribution lines to serve the Folsoms' needs. No surveys were made, permits obtained, or land records checked by FPC before its installation was accomplished.
Upon learning the Folsoms were building the road, in October 1973 the Scudders (who lived in New York) contacted the Folsoms advising them the road was in violation of their property rights. The Scudders also had a fence erected and signs posted to protect their property. Nevertheless, the Folsoms disregarded these warnings and in November 1973 permitted FPC to install their lines.
The Scudders sued FPC in one action and the Folsoms in another. In the former action they charged that FPC wrongfully placed its utility poles and distribution lines on their lands; in the latter they contended the Folsoms trespassed by constructing and using a road on their lands. In the latter suit the Scudders alternatively prayed that should the Folsoms be entitled to a statutory way of necessity, that the court establish the same and award them reasonable compensation and attorney's fees. Scudders sought compensatory and punitive damages in both actions.
FPC and the Folsoms answered and counterclaimed, asserting a right-of-way over the Scudders' property on theories of: (1) prescriptive right; (2) implied common law right-of-way; or (3) statutory way of necessity. Prior to trial, FPC filed a cross-claim against the Folsoms, demanding indemnity for any damages that it might be required to pay to the Scudders.
As the causes proceeded to trial they were consolidated. Unfortunately Mrs. Scudder died in the interim, but Mr. Scudder continued the actions.
The trial court first heard evidence on the Folsoms' affirmative claims. After rejecting their claims of prescriptive right and implied common law right-of-way, the court concluded the Folsoms were entitled to a statutory way of necessity thirty feet in width across Scudders' lands as "reasonably necessary for ingress and egress by persons, vehicles, stock and electricity and telephone services thereon."
Thereafter, by agreement of the parties the court in a nonjury trial considered the remaining issues and awarded the Scudders $7,400 compensation for the statutory way of necessity. FPC was held liable to them for $500 compensatory and $25,000 punitive damages for its trespass. The court determined *109 that two of the utility poles were placed nine and twelve feet, respectively, outside the area designated by the court. FPC was ordered to relocate the poles and lines within the confines of the way of necessity. The trial court denied FPC's cross-claim for indemnity against the Folsoms.
The trial court correctly determined Folsoms did not acquire any common law easement. There was no evidence that any common source of title between the dominant and servient estates had caused the Folsoms' property to be landlocked. See Hanna v. Means, 319 So.2d 61 (Fla.2d DCA 1975); Stein v. Darby, 126 So.2d 313 (Fla. 1st DCA 1961).
Moreover, the trial court did not err in its ruling that the Folsoms failed to establish a prescriptive right. To do so a claimant must show an identifiable parcel of land has been used openly, notoriously, continuously, and uninterruptedly for a period of twenty years. Zetrouer v. Zetrouer, 89 Fla. 253, 103 So. 625 (1925). The Folsoms had only recently commenced their use and the trial judge properly concluded that the uses of the Scudders' land by Folsoms' predecessors had been permissive rather than adverse. This defeats the claim by prescription. See Daytona Beach v. Tona-Rama, Inc., 294 So.2d 73 (Fla. 1974); Burdine v. Sewell, 92 Fla. 375, 109 So. 648 (1926).
The trial judge correctly awarded the Folsoms a statutory way of necessity under Section 704.01(2), Florida Statutes (1975). The award of $7,400 challenged by Scudder as inadequate and by the Folsoms as excessive, is sustained by competent and substantial evidence. Further, the trial court was correct in not awarding counsel fees to the Scudders as there is no right to an award of attorney's fees to a servient landowner where a way of necessity is established. Estate of Hampton v. Fairchild-Florida Construction Co., 341 So.2d 759 (Fla. 1977).
The trial judge could just as logically have awarded a way of necessity wide enough to include the existing utility lines. He did not, and we cannot say he erred as a matter of law in failing to do so. Rather, we think that determination of the statutory way of necessity under Section 704.01(1) is a matter where the trial judge enjoys considerable discretion. An abuse of that discretion has not been shown.
We agree that FPC committed a trespass when it placed its poles and lines on the Scudders' lands. The trial court erred in awarding punitive damages against FPC.
The trial court found:
The evidence thus reveals a policy of the Defendant FLORIDA POWER CORPORATION that was so careless and unconcerned with the rights of property owners that it would proceed to establish a distribution line in the face of a series of facts that no right of way in fact existed for the placement of the distribution poles.
Concluding that FPC had willfully abused the rights of the Scudders, the court awarded them $25,000 punitive damages.
Evidence was introduced to show FPC followed the customary practice of utility companies in Lake County by requesting the Folsoms to relate any disputed boundaries or ownership problems. While FPC concedes a mistake occurred, it claims it was misled by Folsom who did not disclose his lack of ownership of the lands. Moreover FPC points out that Folsom, who observed the installation of electric power lines across the Scudders' property did not even notify FPC of the protest letters he had received from the Scudders' attorneys.
A public utility should at least check the public records to determine the legal ownership of the lands on which it contemplates installing its lines. Prudence certainly dictates that a utility must obtain necessary easements or other legal sanctions from those whose property rights are to be affected before its poles and lines are installed.
Although mistaken and even careless about determining the ownership of the *110 lands where it installed its poles and lines, Florida Power's conduct was not of a wanton character and was certainly not the type of outrageous wrong which warrants imposition of punitive damages. FPC's motivation was to bring utility service to a customer as it is obligated to do under its franchise. Its poles were located near an existing roadway over which its customer exercised apparent control. Its customers, the Folsoms, were ultimately found to be entitled to substantially the same area by way of necessity. Finally, the installation did not result in any damage to any structures or crops.
In Winn and Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214, 222-23 (1936), the classic case on punitive damages, the Florida Supreme Court said:
Punitive or exemplary damages are allowable, however, solely as punishment or "smart money" to be inflicted for the malicious or wanton state of mind with which the defendant violated plaintiff's legal right, and can only be imposed in cases where either by direct or circumstantial evidence some reasonable basis for an inference of wantonness, actual malice, deliberation, gross negligence, or utter disregard of law on defendant's part may be legitimately drawn by the jury trying the case.
While the Scudders protested actions by the Folsoms, the record does not disclose such protest was communicated to FPC either by the Scudders or the Folsoms. Although we do not approve FPC's methods which resulted in a trespass on the lands owned by the Scudders, it would be unfair to impose what amounts to a civil fine against it. As we stated in Carter v. Lake Wales Hospital Association, 213 So.2d 898 (Fla.2d DCA 1968), even gross negligence, by itself, will not support punitive damages.
One final problem: The Folsoms and FPC apparently agreed that if FPC would leave the distribution line and poles in place, the Folsoms would assume liability for its doing so. At trial the Folsoms stipulated that they would be responsible for compensatory damages levied against FPC for any continuing trespass during the pendency of the litigation. The Folsoms did not, however, assume liability for the initial trespass. As noted previously, the installation of the line and poles did not result in any damage to structures or crops. We feel it logical, therefore, to assume the $500 compensatory damages were levied against FPC for the continuing nature of the trespass rather than the initial trespass. This being the case, we view the stipulation as shifting liability for the $500 compensatory damages to the Folsoms.
Accordingly, the awards of compensatory and punitive damages against Florida Power Corporation are vacated and the trial court shall enter judgment in favor of the Scudders and against the Folsoms for $500. In all other respects the trial court's judgment is affirmed.
Affirmed in part, reversed in part, and remanded for entry of a judgment consistent with this opinion.
BOARDMAN, C.J., and McNULTY, J., concur.